## THE PONTIN BROTHERS.

### In re PONTIN LIGHTERAGE & TRANS-PORTATION CORPORATION.

#### No. 177.

Circuit Court of Appeals, Second Circuit.
Feb. 2, 1931.

E. C. Sherwood, of New York City (William L. O'Brion, of New York City, of counsel), for petitioner-appellant.

Edward J. McCrossin, of New York City, for claimant-appellee-appellant.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

■ There was evidence to show that any stern landing at this time and place was careless, but it was also shown that stern landings were made safely. While it is doubtless true that a bow landing involved less danger and was to be preferred, we are not prepared to say on this evidence that a stern landing was per se negligent. Whichever way was chosen, of course the landing was to be made without negligently causing injury to the claim-ant. The testimony tended to establish, even if it may be said that it is not self-evident, that due care required that no unnecessary strain be put upon the line until the claimant had made it fast over the cleat, and that the engines should not have been reversed until the captain knew it was fast. It was testified also that the customary way was to await a signal from the deck hand to indicate that it had been done. That it was careless to reverse without knowing whether or not the line was fast is plain, and so it is that this negligence was the proximate cause of the claimant's injuries. The claimant certainly had the right to expect that he would be given time to do his work and was guilty of no contributory negligence simply because his foot was caught in the slack of a line which he had no reason to foresee would be made to run out by the reversal of the engines before his work in making it fast was done.

■ The award of damages was $11,000, with interest and costs, and the claimant has appealed on the ground that it is inadequate. He was 28 years old on July 29, 1929; his expectancy according to the American Experience Table of Mortality, 36.73; and he was earning $80 a month and his board. He had only worked one day at this job. Before that he had earned $70 a month and his room when employed in an apartment house; in three months at a country hotel had earned $250 besides his room and board and about $7 a week in gratuities; and, when working as a laborer, had earned from $4 to $5 a day. He suffered severe pain and the permanent loss of his leg below the knee. Due to the impinging of nerves in the scar tissue formed when the leg was amputated, the stump is and will be painful until the nerves are released. Perhaps another operation will be necessary. He is a young man whose ability to earn money is dependent upon his physical ability to do manual labor. That has been seriously impaired, and he must face life handicapped in the struggle to obtain work; limited in his field of endeavor; unable to meet, as well as before, the competition of the physically sound; and bear whatever pain and expense the injury to his leg will entail. All this, with the earnings he has lost and the suffering he has endured in the past, leads us to the conclusion that the award was too low, although we know that the decision of the learned judge who fixed the amount is entitled to great respect. Cases may be found both in the admiralty and at law where higher and lower awards have been made for comparable injuries, and they show little

more than that, as everybody knows, men differ in their judgment of what is fair and adequate compensation for personal injuries just as they do on many other things. In our judgment, the award should be increased to $16,000.

Decree modified by increasing the award to $16,000, with interest and costs, and, as so modified, it is affirmed.