Josie A. Potter, as Administratrix of the Estate of Charles N. Potter, Deceased, et al., Appellants, *v.* New York, Ontario and Western Railway Company, Respondent.

(Argued March 8, 1933; decided April 18, 1933.)

*Crandall Melvin* for appellants. The Appellate Division was in error in holding that the letters are as a matter of law a lease between defendant and the coal company, under the terms of which no duty or obligation was upon the defendant to make repairs. (*Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Quinn* v. *Staten Island R. T. Ry. Co.*, 224 N. Y. 493.) The trial court properly submitted to the jury the question of relationship between defendant and the coal company as bearing upon defendant's duty, if any, to plaintiff's intestate. (*Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442; *DeLee* v. *Pardy Construction Co.*, 249 N. Y. 103; *Constantino* v. *Watson Contracting Co.*, 219 N. Y. 443; *Lyman* v. *Putnam Coal & Ice Co.*, 182 App. Div. 705; *Quinn* v. *Staten Island R. T. Ry. Co.*, 224 N. Y. 493; *Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Osuldsen* v. *D., L. & W. R. R. Co.*, 213 App. Div. 247; *Verdini* v. *Interborough R. T. Co.*, 192 App. Div. 379.) The existence of a lease of the coal pocket does not relieve the defendant from liability. (*Cullings* v. *Goetz*, 256 N. Y. 287; *Kessler* v. *The Ansonia*, 253 N. Y. 453; *Dollard* v. *Roberts*, 130 N. Y. 269; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354; *Golob* v. *Pasinsky*, 178 N. Y. 458; *Loucks* v. *Dolan*, 211 N. Y. 237; *Zolezzi* v. *Bruce-Brown*, 243 N. Y. 490; *Frank* v. *Simon*, 109 App. Div. 38; *Maslin* v. *Childs*, 146 App. Div. 174; *Jameson* v. *Keystone Warehouse Co.*, 210 App. Div. 212.)

*Avery S. Wright* and *Elbert N. Oakes* for respondent. The ruling of the Appellate Division that the letters constituted a lease was correct. (*Averill* v. *Taylor*, 8 N. Y. 44; *Pratt* v. *H. R. R. R. Co.*, 21 N. Y. 305; *Cohen* v. *Berlin & Jones Envelope Co.*, 166 N. Y. 292; *Petrie* v. *Trustees*, 158 N. Y. 458; *Wyllie* v. *Palmer*, 137 N. Y. 248; *Sweezy* v. *O'Rourke*, 226 N. Y. 378.) The relation of landlord and tenant existing, even were there an express covenant to repair, plaintiff could not recover in tort

for injuries caused by its breach. (*Cullings* v. *Goetz*, 256 N. Y. 287; *Fiorntino* v. *Mason*, 233 Mass. 451.) There was no evidence upon which defendant could be held liable for failure to repair the ladder. (*Suydam* v. *Jackson*, 54 N. Y. 450; *Widmar* v. *Healey*, 247 N. Y. 94; *Klein* v. *City of Portland*, 106 Ore. 686.) The trial court erred in submitting to the jury the legal relationship of the parties created by the letters, as well as their construction. These questions, as held by the Appellate Division, were matters for the court to determine and the determination reached by the appellate court was correct. (*Witty* v. *Matthews*, 52 N. Y. 512; *Daly* v. *Wise*, 132 N. Y. 306; *Freiot* v. *Jacobs*, 209 App. Div. 334; *Wyllie* v. *Palmer*, 137 N. Y. 248; *Sweezy* v. *O'Rourke*, 226 N. Y. 378.)

KELLOGG, J. The defendant railroad was the owner of a coal trestle some twenty-five feet wide and thirty feet high. The space below the deck of the trestle was partitioned off into fifty compartments, each compartment having two of the bulkheads, used to support the trestle, as side walls. The deck of the trestle served as a roof, while the base of the trestle served as a floor for all compartments. Planking constituted the other walls, and completed the inclosures. These pockets were designed to store coal, delivered to them by the railroad, through trap doors in the deck, from coal cars stationed on tracks running along the deck. Two of these coal pockets were in the occupation of the J. E. Hawley Coal Company, under lease or license from the defendant railroad. On a certain day the defendant delivered coal into one of the Hawley pockets, and, the Hawley Company was unloading into trucks, on the outside of the trestle, through a shute which passed through the side wall of the pocket. The coal lodged and it became necessary to dislodge it with shovels. Several men, employed by

the Hawley Company, entered the trestle for this purpose. One of these men was Charles N. Potter, who made entrance to the pocket through the trap door in the deck of the trestle, and descended to the floor by means of a ladder, fastened to the bulkhead wall at points which placed the ladder just under the opening. After working for a time, Potter, attempting to make his exit, climbed the ladder, which broke from its fastenings, and precipitated him to the floor of the pocket causing his death.

The widow of Potter filed a claim against the J. E. Hawley Coal Company, the employer, and its insurance carrier, and received an award of death benefits. The award, paid by the carrier, operated to transfer any cause of action, held by the widow against the defendant railroad company, for negligent maintenance of the coal pocket, to the carrier. Accordingly, this action in negligence was brought, on behalf of the carrier, to procure damages for the death of Potter. A verdict was recovered at Trial Term. The Appellate Division reversed, and ordered a new trial. The plaintiff, having stipulated for a judgment absolute, has appealed to this court. For the purpose of the discussion, we will assume that, if the railroad owed a duty of care to Potter, it had breached that duty in not fastening the ladder more securely.

Liability for injuries or death, suffered by a visitor to dangerous structures or premises, arises from occupancy, not from ownership. The occupant having exclusive possession may forbid entrance to all visitors, in which case, with some exceptions, no duty of care arises, and the visitor may not complain if injured. On the other hand, the occupant, having such possession, alone may give an invitation, or grant permission to make entry. In that case a duty of care does arise to bind the occupant, the nature and extent of which depends upon the character of the visitor, as determined by the invitation or permission extended. Thus, the duty of

active care to make the premises safe is owed to an invitee, or business visitor; whereas the duty of disclosing or eliminating a known danger is the measure of the duty owed to a gratuitous licensee. As no duty whatever arises except through invitation or permission, and the measure of that duty depends upon whether there has been given the one or the other, ordinarily the duty of care, if any, binds no other than the occupant, who alone has power to invite or license. This may be subject to some exceptions such as when the owner leases dangerous premises knowing that the tenant will invite the public to visit the same. However, generally speaking, the owner, having parted with possession, and lost power to exclude or to invite, cannot be liable if the visitor be injured. These principles are universally acknowledged to be the law upon the subject. (Salmond on the Law of Torts, p. 452; The Law of Torts, Pollock [13th ed.], p. 527; 3 Shearman & Redfield on the Law of Negligence, § 704; Am. Law Inst. Restatement of the Law of Torts, §§ 212, 213, 227; *Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442; *Cullings* v. *Goetz*, 256 N. Y. 287.) " The person responsible for the condition of the premises is he who is in possession of them for the time being, whether he is the owner or not. For it is he who has the immediate supervision and control and the power of permitting or prohibiting the entry of other persons." (Salmond, *supra*, pp. 445, 446.) The power of control, necessary to raise the duty of care, " implies the power and the right to admit people to the premises and to exclude people from them." (*Cavalier* v. *Pope*, [1906] A. C. 428, 433.) In the case of a tenant's possession under a lease, the landlord is not liable, even though he assumes the duty to repair the premises. (*Cullings* v. *Goetz, supra.*) In that case Chief Judge CARDOZO stated: " Liability in tort is an incident to occupation or control;" (p. 290). " By preponderant opinion, occupation and control are not

reserved through an agreement that the landlord will repair;" (Id.) " The tenant and no one else may keep visitors away till the danger is abated, or adapt the warning to the need;" (Id.) " The landlord has at most a privilege to enter for the doing of the work, and at times not even that if the occupant protests." (Id.)

The relationship between the Hawley Coal Company, the occupant of the pocket in question, and the defendant owner, is determined by the terms of two letters exchanged between them. Hawley wrote asking for the consent of the defendant that it might take over the lease of a previous occupant " at the present rental charge of 10 (10¢) cents per gross ton for all coal handled through said pockets." The defendant answered, saying: " You have my authority and approval to occupy these coal pockets " at the rental named. If we were to follow the decision in the old case of *Wood* v. *Lake* (Sayer's Reports, p. 3), which has been much discussed, we should doubtless be compelled to hold that the relationship of landlord and tenant did not exist between the defendant and the Hawley Coal Company. It was held in that case that when an owner orally stipulates with another that for a period of seven years that other may stack coal upon the owner's land, there is not a lease but a license, and no writing is required by the Statute of Frauds. In Kent's Commentaries ([14th ed.] vol. 3, p. 715), where *Wood* v. *Lake* is discussed, there is a note to the following effect: " If the agreement gives a right of exclusive occupation, and the landlord has nothing to do on the land, it is more than a license." However, it is unnecessary to determine whether or not the letters in question created a tenancy. As we have seen, the liability of the occupant or the owner is determined by the nature of the occupancy, and the invitation or license extended. If possession and control were exclusively in the Hawley Coal Company, whether its occupancy and control was by virtue of a

lease or a license, the owner defendant would not be liable.

For many years the Hawley Coal Company occupied the coal pocket for its own exclusive use. It alone deposited and stored coal in the compartment set apart for it. There can be no doubt that the parties intended that the Hawley Company should have the exclusive right so to store coal. Daily, Hawley's men entered the pocket through the trap door in the deck of the trestle, and did work therein. The railroad men, so far as the record shows, never entered the pocket, except on rare occasions to make needed repairs. That they so entered was not sufficient to indicate that the railroad reserved a measure of control over the pocket, or retained power to forbid or permit visitors to make entry thereto. (*Cullings* v. *Goetz, supra.*) In that case there was assumed " The possibility of so phrasing and enlarging the rights of the lessor that occupation and control will be shared with the lessee." There was no such phrasing of the letters which passed between the occupant and the owner.

The order should be affirmed, and judgment absolute ordered against the appellant on the stipulation, with costs in all courts.

CRANE, J. (concurring in result). I concur in the result. The court charged the jury: " Now the claim of the plaintiff is that the wrongful act of the New York, Ontario and Western Railway Company, which caused the death of Mr. Potter, was its failure to erect the ladder in this coal pocket in which he was working at the time originally in a reasonably safe condition for the use for which it was intended, and also their failure to maintain that ladder in a reasonably safe condition for use, and unless you find that fact to be true there cannot be any recovery for the plaintiff in this case."

There is no evidence that the ladder was not constructed originally in a proper way or that it afterwards became out of repair before the day of the accident, June 7, 1928. In fact, all the evidence shows that the men using the ladder on the day of the accident found it safe and noticed no defects. At the time the deceased fell the ladder had pulled away from its fastenings evidently causing the accident. No notice of any loose or defective condition came to the knowledge of the owner or lessee either actually or constructively.

For these reasons I am for affirmance.

POUND, Ch. J., O'BRIEN and CROUCH, JJ., concur with KELLOGG, J.; CRANE, J., concurs in result in memorandum; LEHMAN, J., concurs in result; HUBBS, J., not sitting.

Ordered accordingly.