### GUERRINI v. UNITED STATES.

#### No. 191, Docket 20899.

Circuit Court of Appeals, Second Circuit.

March 31, 1948.

. Arthur M. Boal, of New York City, and J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Tompkins, Boal & Tompkins, of New York City, of counsel), for appellant.

Robert H. Kilroe and Delson, Levin & Gordon, all of New York City, for appellee.

Before L. HAND, SWAN and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree in the admiralty, awarding damages to the libellant against the United States, for injuries suffered while he was on board the steamer, William B. Giles. The suit was brought under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.; and the only issues are whether the ship was negligent, whether the libellant was guilty of contributory negligence, and what are the proper damages. At the time the ship was moored in Brooklyn alongside the dock of a contractor, the Continental Shipyard, apparently for general overhauling, although the record leaves it open just what work the contractor was to do. Whatever it was, to do part of it the contractor engaged the Bell Contracting Company, as a sub-contractor to clean the boilers and the tanks, preparatory to the ship's return voyage as a transport. The libellant—a bricklayer—was an employee of the Bell Contracting Company, and on October 4, 1944, he boarded the ship in the morning, and two hours later went ashore to get a bale of rags weighing about 100 pounds with which to clean the tanks. He and one of the two partners, who together composed the Bell Contracting Company, were lowering the bale into No. 1 hold; the libellant holding it back by a rope which led over the top of the hatch coaming, that served as a sort of brake. While doing this his foot slipped upon a patch of grease on the deck about two by three feet in area; and—in a manner by no means clear—he fell over the coaming and into the hold, suffering the injuries for which he sued. The judge found that the respondent had been negligent in allowing the patch of grease to remain upon the deck, and that the libellant had neither

been guilty of contributory negligence, nor assumed any risk; and he awarded damages in the sum of $10,549.10. He also found that the respondent had not surrendered control of the ship to the contractor; and that it knew ·that the workmen must use the deck in the course of their work. We cannot say that it was "clearly erroneous" to find that the libellant fell into the hold because he slipped upon the grease; or that the respondent had not surrendered control of the ship to the contractor. Indeed, as to the last it appeared that an officer of the ship was on watch on that day; presumably he made his rounds, including the deck.

■ The Supreme Court in Seas Shipping Co. v. Sieracki[1] held a shipowner liable to a stevedore, engaged in lading the vessel, for breach of an implied duty to make the ship seaworthy. It is necessary in the case at bar to decide whether this doctrine applies to the employee of a subcontractor like the libellant, because, although we have held that the duty ceases, when the owner has surrendered "control" to the contractor,[2] as we have just said, the owner had not surrendered control. The grounds of the majority in Seas Shipping Co. v. Sieracki, supra,[3] were that a stevedore performs part of the "ship's service," more particularly that: "Historically the work of loading and unloading is the work of the ship's service, performed until recent times by members of the crew"; (page 96 of 328 U.S., page 878 of 66 S.Ct.). The work of cleaning a ship's tanks and boilers may be equally regarded as part of the "ship's service," and presumably such work in the past was done by the crews; and, for that matter, much of the upkeep of a ship has always been done by the crew, and still is, at least at sea. A modern ship for example carries, not only the traditional ship's "carpenter,"

but at times a substantial complement of repairmen, who are members of the crew, and are protected by an implied duty that she shall be seaworthy. It is impossible to be sure how far the new doctrine may go, for everything done on board a ship contributes to her "service," if it helps to make and keep her ready for her work; and probably all but major structural repairs were, at least in early times and elsewhere than in the home port, often made by the crew. Yet we should hesitate to read the decision as intended to extend the protection of what amounts to a warranty of seaworthiness to all workmen upon a ship, however casual their presence there, and however much their relation to the employer is unlike the early paternalistic status of master and crew, many of whose features have vestigially persisted to the present time. At any rate it is proper, if such an innovation is to be made, that it should await the sanction of the Supreme Court in the exercise of its function of supplying the inadequacies of the past. The libellant does not assert any such claim; and we hold that the respondent was not in duty bound to furnish him with a seaworthy ship.

We held in Puleo v. H. E. Moss Co.[4] that the employee of a sub-contractor engaged in freeing a tanker's piping of gasoline was in the position of a "business guest," and that the shipowner's liability depended upon the law of New York, the ship being moored to a wharf in this port. In Riley v. Agwilines, Inc.,[5] the Court of Appeals of New York pointed out that in so holding we had ignored several decisions of the Supreme Court[6] which, following Southern Pacific Co. v. Jensen,[7] had held that in cases closely parallel the law of the sea displaced the local law. Whether those decisions are still law depends upon what is left of the whole doc-

---

[1] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

[2] Lauro v. United States, 2 Cir., 162 F. 2d 32; Lynch v. United States, 2 Cir., ·163 F.2d 97.

[3] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

[4] 2 Cir., 159 F.2d 842.

[5] 296 N.Y. 402, 73 N.E.2d 718.

[6] Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L. Ed. 372; Messel v. Foundation Co., 274 U.S. 427, 434, 47 S.Ct. 695, 71 L.Ed. 1135; Spencer Kellogg & Sons, Inc., v. Hicks, 285 U.S. 502, 514, 52 S.Ct. 450, 76 L.Ed. 903.

[7] 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1096, L.R.A.1918C, 451, Ann.Cas.1917E, 900.

trine of Southern Pacific Co. v. Jensen, supra,[8] which has proved to the last degree difficult in application, even in the field of workmen's compensation where it arose. The Supreme Court had for long obviously continued to recognize it at all only with mounting reluctance;[9] and in Standard Dredging Corporation v. Murphy[10] Justice Black for a unanimous court declared that "the Jensen case has been severely limited, and has no vitality beyond that which may continue as to state workmen's compensation laws" (page 309 of 319 U.S., page 1068 of 63 S.Ct.). Strictly, this was dictum, for the actual decision was that "the Jensen Case" did not cover a state unemployment tax laid upon maritime workers. Moreover, it must be admitted that there is a closer connection between an employer's liability for injuries and the workmen's compensation which supersedes it, than between that liability and an unemployment tax. On the other hand, to secure to seamen the equivalent of their wages while they are out of work, would appear to invade the law of the sea as to a matter where uniformity—on whose maintenance the whole doctrine rests—was far more essential than as to the owner's liability to a shore workman who happens to be injured upon the deck rather than on the wharf alongside. We are therefore disposed to treat the language quoted from Standard Dredging Co. v. Murphy, supra,[10] as authoritative and to adhere to the view we took in Puleo v.

H. E. Moss, Co., supra.[11] Moreover, we prefer to rest that decision upon this ground rather than upon the Conservation Act;[12] and to leave undetermined the question whether the navigable waters of a port are a "place subject to the exclusive jurisdiction of the United States" within the meaning of that act.

As we said in that case, the New York decisions appear not to distinguish the measure of care due to a "business guest" from that due from his employer to an employee;[13] and, if so, a failure to use reasonable care to provide for the "guest's" safety is a breach of duty, even though the danger be apparent. At times opinions have read as though the duty was limited to pointing out the dangers and not including any affirmative provision for the safety of the "guest" while on the premises.[14] It is not surprising that this ambiguity should arise, because practically it makes no difference, since even though the owner's duty be the broad one, contributory negligence or assumption of risk is an absolute bar. However, in a suit in the admiralty the distinction becomes important, because if the shipowner owes a positive duty to provide a safe place, regardless of the openness of the danger, the "guest's" contributory negligence is not a bar, but only goes in mitigation of damages. This is as true when no statute so provides as when one does.[15] Moreover, whether the defence is total or partial, depends upon the forum.[16] Being therefore obliged to

[8] 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900.

[9] Just v. Chambers, 312 U.S. 383, 392, 668, 61 S.Ct. 687, 85 L.Ed. 903; Parker v. Motor Boat Sales Co., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; Davis v. Department of Law, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246.

[10] 319 U.S. 306, 63 S.Ct. 1067, 87 L.Ed. 1416.

[11] 2 Cir., 159 F.2d 842.

[12] § 457, Title 16, U.S.C.A.

[13] Hess v. Bernheimer & Schwartz Pilsener Brewing Co., 219 N.Y. 415, 418, 114 N.E. 808; Dougherty v. Pratt Institute, 244 N.Y. 111, 113, 155 N.E. 67; Haefeli v. Woodrich Engineering Co., 255 N.Y. 442, 448, 175 N.E. 123; Potter v. New York, Ontario & Western R. Co., 261 N.Y. 489, 492, 185 N.E. 708.

[14] McLean v. Studebaker Brothers Co., 221 N.Y. 475, 479, 117 N.E. 951, 1 A.L.R. 1551.

[15] The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; Stokes v. United States 2 Cir., 144 F.2d 82, 87; Smith Scow Corporation v. Seaboard Great Lakes Corporation, 2 Cir., 146 F.2d 535; Militano v. United States, 2 Cir., 156 F.2d 599, 603; Kreste v. United States, 2 Cir., 158 F.2d 575, 580; American Stevedores, Inc., v. Porello, 330 U.S. 446, 458, 67 S.Ct. 847 (semble).

[16] Atlee v. Union Packet Company, 21 Wall. 389, 395, 396, 22 L.Ed. 619; Belden v. Chase, 150 U.S. 674, 14 S.Ct. 264, 37 L. Ed. 1218; Johnson v. United States Shipping Board Emergency Fleet Corporation, 2 Cir., 24 F.2d 963; In re Pennsylvania R. Co., 2 Cir., 48 F.2d 559, 565, 566.

decide whether in New York the duty goes beyond warning the "guest" of any dangers, we hold that the more common expression is authoritative, and that the duty is the same as that of employer to employee.

In the case at bar the findings are not sufficient finally to dispose of the case; for, although the judge found the respondent negligent, that is not a finding of fact.[17] True, he found that the libellant had slipped upon a patch of grease, but he did not find how long it had been on the deck; and the cause must go back for a specific finding on that issue, because the respondent's negligence depends upon how long the grease had been on the deck. Unless the libellant satisfies the judge that a patch of the size described had been left in the place described for a period long enough to be noticed by the officer on watch, the libel must be dismissed. If on the other hand the libellant does so satisfy the judge, the damages will be divided in accordance with the principles we have already discussed. We hold that to leave oil or grease near a hatch where men must work is negligent, after it has been seen, or after a reasonable time has elapsed to see it; although it would not be to the same degree negligent that it was, for example, to leave grease on the loose hatch cover in Lauro v. United States, supra.[18] It is true that the chance is to the last degree remote that grease on the deck will cause anyone to fall into the hold, yet it is not improbable that workmen might slip upon it and hurt themselves; and it is easy to clean it up. On the other hand, it appears to us to have been much more negligent for the libellant to select the greasy patch to stand in when lowering the bale into the hold. It could have been of no moment whatever where the bale landed, and there were many other spots around the hatch equally suitable. The libellant must have been either totally indifferent to any possibility of danger, or have paid no attention whatever to his footing. We hold that if the judge supplies the finding we mention the faults will be

in the proportion of one to four and a decree will be entered for one fourth of the award which he made.

Decree reversed.

---

[17] Barbarino v. Stanhope SS. Co., 2 Cir., 151 F.2d 553, 555; Kreste v. United States, supra, 2 Cir., 158 F.2d 575, 577.

[18] 2 Cir., 162 F.2d 32.