## MILLER v. THE SULTANA et al.

### No. 279, Docket 21342.

United States Court of Appeals
Second Circuit.

Argued June 15, 1949.

Decided Aug. 3, 1949.

---

See, also, 79 F.Supp. 877.

Sparkman D. Foster, of Detroit, Mich. (Foster & Lutz and Allan B. Lutz, all of

Detroit, Mich., and Richards & Coffey and Laurence E. Coffey all of Buffalo, N. Y., on the brief), for claimant-appellant.

Edward J. Desmond, of Buffalo, N. Y. (Desmond & Drury and John E. Drury, Jr., all of Buffalo, N. Y., on the brief), for libellant-appellee.

Before SWAN and CHASE, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge.

This is a libel in Admiralty to recover damages for personal injuries sustained by libellant, a prospective employee of the ship, in falling through an open hatch when he tripped over an unidentified object in a passageway beside the hatch.

The case was tried to the jury pursuant to the Great Lakes Act, 28 U.S.C.A. § 770 (1946) : 28 U.S.C.A. § 1873 (1948), and decree entered on a verdict in favor of the plaintiff in the amount of $50,400, reduced by the jury from $56,000 by 10% for libellant's contributory negligence.

Special findings were made by the jury at the Court's request, as follows: R. P. 324.

"Did the ship, its officers or crew fail to provide a passageway along the outboard side of the ship at No. 6 hatch that was reasonably safe for the use under all the circumstances?" The answer is "Yes."

"Was Miller guilty of any negligence contributing to his fall? Yes."

"If so, what per cent of the damages should he stand because of his own negligence? 10 per cent."

"If you have found that Miller was guilty of contributory negligence, have you deducted his percentage of the damages from the total damages? Yes."

From the decree in favor of libellant-claimant appeals.

A previous action under the Jones Act, 46 U.S.C.A. § 688, was dismissed after verdict for the plaintiff in the amount of $77,-000 because he had not become a seaman before his injury. Miller v. Browning S. S. Co., D.C., 73 F.Supp. 185, affirmed 2 Cir., 165 F.2d 209.

The appellant complains (1) of the denial of a motion to dismiss at the close of the evidence, (2) of error in the admission of evidence of a claimed custom to replace the outside hatch cover after the unloaders "struck skin," the custom not having been pleaded, (3) error in the charge, (4) error in the apportionment of damage, 90% to the ship, and (5) error in the excessive amount of damages.

Libellant was an oiler who had been ill in a hospital and out of work for a period of some two and one-half months. He left the hospital on the day of his injury, reported at a union hiring-hall, and was referred to the Sultana to seek employment, the ship having requested an oiler of the union. He walked about three-quarters of a mile to the ship, carrying a barracks bag and small grip. The ship was docked with its starboard side in, discharging a cargo of grain. About 12:30 o'clock, P.M., libellant climbed a ladder up the side of the ship, making two trips to bring both his bags up. He then started aft on the starboard side, with the barracks bag over one shoulder and the grip in the other hand. After passing several hatches he crossed between two hatches to the port or outboard side of the ship and turned aft again in a passageway between No. 6 hatch and a pile of hatch covers piled against the port rail of the ship. The width of the passage between the hatch coaming and the pile of hatch covers was between twenty and twenty-four inches. The leg of the elevator and a number of employees of the elevator, who were unloading the ship and were not under the ship's control, were in No. 5 hatch at the time, having finished No. 6 hatch about 11:30 o'clock, A.M. No. 5 and No. 6 hatches both opened into No. 2 hold. Some grain had been spilled in the passage alongside No. 6 hatch.

Libellant stumbled over some object about a step and a half after entering the passage and fell into the hold, suffering severe injuries.

There was no evidence concerning the nature of the object over which libellant stumbled nor the length of time it had been in the passage. The passage had been used

by the ship's captain and his wife at 11:45 or 11:50 o'clock, A.M., going to dinner, and at 12:00 o'clock, noon, or 12:05, P.M., returning from dinner. They noticed no obstructions. Others of the crew used it in about the same period and noticed no obstructions.

■ Evidence was introduced, over objection, of a claimed local custom to have the ship replace the outside hatch cover when the elevator employees "hit skin"—reached the deck of the hold—in removing the grain. They "hit skin" under No. 6 hatch at about 11:30 o'clock, A.M. The movement of the elevator leg to No. 5 hatch at about that time may be considered notice to the employees of the ship that the hold under No. 6 hatch had been substantially emptied. There is, however, no evidence of any such custom.

No such custom had been pleaded, but the admission of evidence of the custom was within the Court's discretion. If any surprise resulted, request for time to meet the evidence might have been made. This was not done.

■ There is, however, no evidence that the custom was known to the ship. The ship cannot be held negligent for failure to follow a claimed local custom unless the knowledge of the custom is brought home to it. Cf. Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995, 996, 997. The Albisola, D.C., 6 F.Supp. 392. Nor would the jury be justified in finding any duty of the ship to this plaintiff, familiar with unloading operations, to replace, at noon, in broad daylight, the outside hatch cover, unloading in that hold under the adjacent hatch still unfinished. An experienced seaman is charged with the knowledge of these conditions. Carlson v. U. S., 5 Cir., 71 F.2d 116, 117. Hardie v. New York Harbor Dry Dock Corporation, 2 Cir., 9 F.2d 545.

■ It is true that there are situations wherein it would be negligent for the ship to leave a hatch open or unprotected, such as where the hatch was in the control of the ship and was left uncovered at night without any guard, guard-rail, or without proper illumination to warn of the danger. Badalamenti v. U. S., 2 Cir., 160 F.2d 422, 425-426; The Omsk, 4 Cir., 266 F. 200; West India & P. S. S. Co. v. Weibel, 5 Cir., 113 F. 169. But as a matter of law, and certainly in the absence of a showing that the ship had knowledge of the claimed local custom, it was not negligent for the hatch here to have been uncovered in broad daylight while the grain elevator's employees were still in the hold, having just "hit skin" under hatch No. 6 about an hour before the plaintiff's fall. The leg of the elevator was in adjacent No. 5 hatch and there were a number of employees of the elevator working there. The hold under No. 6 hatch was substantially emptied but it had not been returned to the sole control of the ship. It was in the situation of an ordinary open hatch in a port,—open for discharge of cargo.

The instant case, therefore, is analogous to the situation where the hatch is left open awaiting cargo, and it is well settled that there is no negligence solely in leaving open a cargo hatch if the ship is awaiting cargo. Long v. Silver Line, 2 Cir., 48 F.2d 15, 16; The Saratoga, 2 Cir., 94 F. 221; The Louisiana, 5 Cir., 74 F. 748. And the analogy is given greater force here, for the libellant, an experienced seaman, had reason to believe that there might be danger from an open hatch which was plainly visible to him and illuminated by daylight. Cf. Badalamenti v. U. S., supra, 160 F.2d at page 426.

■■ The Court charged correctly (R. p. 316) that the ship would not be liable for the obstruction unless it had been there long enough so that the operators of the ship, in the exercise of reasonable care, should have known of it. But the charge, as a whole, could have been interpreted by the jury as permitting recovery if the ship failed to provide a reasonably safe passageway, regardless of the length of time any obstruction existed or of notice to the ship. That possible construction is emphasized by the wording of question No. 1 submitted to the jury. This places too onerous a duty on the ship and the error is of sufficient importance to be noticed by this Court sua sponte, even though no exception was taken.

■ Miller went aboard the ship seeking employment as an oiler pursuant to a reference by the union through whom the ship obtained seamen. His presence aboard, in such pursuit, was in the ship's interest as well as his own. Thus, he was a business "guest" or "invitee", Restatement of Torts, Section 343, Comments (a), (e) and (f), and the measure of care due to Miller goes beyond merely warning the "guest" of any dangers, for the duty is the same as that of employer to employee, to use reasonable care to provide for the "guest's" safety. Guerrini v. U. S., 2 Cir., 167 F.2d 352, 355-356.

■ The failure of the "Sultana" to use reasonable care to provide a safe passageway for the visitor seeking employment would be a breach of its duty to such invitee. Anderson et al. v. Lorentzen, 2 Cir., 160 F.2d 173, 174; Fodera v. Booth American Shipping Corporation, 2 Cir., 159 F. 2d 795; Guerrini v. U. S., supra, 167 F.2d at page 355. Nor was this duty any the less because the hatch was, at the time of the fall, partially in the control of the grain elevator's employees who had substantially emptied the hold at the time of the fall. Anderson et al. v. Lorentzen, supra, 160 F. 2d at pages 174, 175; Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995; La Guerra v. Brasileiro, 2 Cir., 124 F.2d 553; Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237. The charge imposed an even heavier duty, that of an insurer of a safe passageway.

■ Moreover, it was error to deny the motion to dismiss at the close of the evidence. There was no evidence of any breach of Sultana's duty or a failure on its part to use reasonable care to provide a safe passageway for the plaintiff. There was no evidence of notice, actual or constructive, to the ship that the passageway had become unsafe. This was necessary to go to the jury on any claim of negligence based on the existence of the alleged obstruction in the passageway. Guerrini v. U. S., supra, 167 F.2d at page 356. Old South Lines, Inc., v. McCuiston, 5 Cir., 92 F.2d 439.

In view of the result required by our view of the failure to establish negligence, we do not reach the question of the failure to charge on "present value," or the amount of the verdict or the manner of its apportionment.

The decree is reversed and remanded with instructions to dismiss the libel.