GOLDBERG v. UNITED STATES et al.

No. 17777.

United States District Court
E. D. New York.

June 7, 1950.

Samuel L. Sargent, New York City (Joseph H. Sand, New York City, of counsel), for libellant Goldberg.

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y., and Burlingham, Veeder, Clark & Hupper, New York City (John A. Gleason, New York City, of counsel), for the United States of America and The North Atlantic Gulf Steamship Company.

Bernard Katzen, New York City (Harry Schechter, New York City, of counsel), for the Waterfront Lumber Co., Inc.

GALSTON, District Judge.

The libellant is the widow of Barney Goldberg. On September 15, 1945 he was in the employ of the Waterfront Lumber Co., Inc., the respondent-impleaded, and was one of its carpenter crew engaged in work on the steamship James B. Richardson. The vessel was lying at Pier 17, at the foot of Fulton Street, in the Borough of Manhattan. During the period of his work on that day he fell from the 'tween deck to the floor of the hold in hatch No. 5 and sustained severe injuries which resulted in his death.

The libel is filed pursuant to the provisions of the Suits in Admiralty Act of 1920, 46 U.S.C.A. § 741 et seq., against the United States of America and The North Atlantic & Gulf Steamship Company, Inc., for damages for wrongful death. The respondents impleaded the Waterfront Lumber Co., Inc.

The vessel was being operated by the respondent, The North Atlantic & Gulf Steamship Company, Inc. for the account of the United States of America, under a general agency agreement.

On the day in question the decedent was engaged, with other carpenters of Waterfront Lumber Co., in the construction of shifting boards for use in loading grain in No. 5 hold. The ship was being outfitted for grain carrying purposes. The work was under the management and supervision of the Waterfront Lumber Co., and the hatches were in its complete control.

During the morning of September 15, 1945 the decedent was working on the 'tween deck with one Antonio Interdonato in cutting beam pillars. The cut lumber was then passed down to the carpenters

in the hold. Later that morning Goldberg and Interdonato, on orders of their foreman, continued the same work on the top deck. At about 11:30 a. m. the foreman ordered all the carpenters to suspend work because rain threatened. Upon his orders No. 5 hatch on the top deck was covered and a tarpaulin thrown over the hatch cover.

Up to that time when the hatch was open on both the top deck and the 'tween deck, the natural light which came through the open hatch was adequate to enable the work to be carried on so that no artificial light was required. The 'tween deck hatch opening was about 20 by 30 feet, and there was also a platform 10 to 15 feet wide between the hatch opening and the skin of the ship on the 'tween deck.

The record discloses that after the hatch covering had been put on, at or about 11:30 a. m., all of the carpenters with the exception of the decedent went ashore for lunch. He was last seen heading in the direction of the escape hatch which led from the top deck to the 'tween deck, and he told Interdonato that he was going down for his coat. It seems that all the workers of that crew had left their coats on the 'tween deck at the start of work in the morning. Goldberg was in the habit of bringing his lunch and carrying it in his coat pocket, so it may be that his purpose for going down to the 'tween deck was to get his lunch. When the carpenter crew returned from lunch and proceeded to take off the hatch cover on the top deck, it was seen that the decedent's body was lying in the lower hold. Nobody saw him fall.

The fault charged against the respondents is that they failed to provide any guards or barricades on the 'tween deck, and also failed to furnish adequate lights or lighting in the hatch. At the trial the libellant also sought to show that the ship owner was negligent in permitting hatch cover boards to be "scattered" about the 'tween deck of this hatch.

White, the second officer of the ship, and deck officer on September 15th, testified that the ship's crew had nothing to do with the work going on in hold No. 5. He also testified that none of the ship's crew removed the hatch covers either at the top deck or on the 'tween deck. This testimony is in conflict with that given by members of the carpenters' crew who said that the hatch covers were already off when they began to work on the morning of September 15th. There is conflicting testimony too as to whether the hatch cover boards were scattered about the 'tween deck. Just what they meant by "scattered formation" was not elaborated. The libellant's witnesses, Kain and Frank Interdonato, testified that these hatch boards were laid one on top of another in two piles on each side (port and starboard) of the hatch opening, but somewhat criss-cross rather than full length on top of each other. I am inclined though to accept the testimony of Antonio Interdonato, who appeared to be the most forthright of the witnesses. He said that the hatch boards were in two piles, each of three or four boards, one on top of the other, and at about four feet from the skin of the ship, and at an equal distance from the hatch opening. It was he too, it will be recalled, who was working with Goldberg. The record does not disclose who had piled the hatch boards on the 'tween deck. White testified that it was the practice of the contractors to remove hatch boards out of their way if there was need to do so. This testimony was not contradicted, nor is there any testimony that any member of the carpenters' crew was of opinion that the hatch boards were an obstruction or made the 'tween deck a dangerous place on which to work. It cannot be concluded, therefore, that the hatch boards on the 'tween deck made the 'tween deck a dangerous place on which to work. Since nobody saw the decedent fall, it cannot be concluded that he stumbled over a hatch board, or even over one of the beams cut by himself and Interdonato and left on the deck. It may be that he inadvertently stepped into the open hatch. But again as to that the record is silent. If the death was the result of an accident arising out of the darkened condition of the 'tween deck, that condition was brought

about by the action of the carpenters' crew, and during the time that the hatch was in its control. At that specific time, as I have said, work had been suspended.

The ship's officer testified that light clusters were available in the ship's stores and that no one of the carpenters' crew requested such lights from him. A witness, Cross, was called by the libellant in an attempt to prove that a request had been made for such lights, but his testimony was merely to the effect that he mentioned to a member of the ship's crew that lights would be needed "if that gang goes back to work". I accept White's testimony, and since too no custom was shown which required guards around an open hatch while work of the kind in question was carried on, it must follow that the libellant cannot recover from the respondents since there is no proof of any act of negligence on the part of either respondent. In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, as interpreted by our Court of Appeals, it was held that a warrant of seaworthiness to seamen and to contract stevedores did not extend to employees of independent contractors making repairs on a ship, Guerrini v. United States, 2 Cir., 167 F.2d 352; see also Lynch v. United States, 2 Cir., 163 F.2d 97; but even were this not the law, the question does not arise, for no unseaworthiness was proved.

So far as liability of the Waterfront Lumber Co. is involved, the libellant cannot recover from that employer in this suit. Her relief against it as the employer of the decedent is pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. See Lynch v. United States, supra. The Waterfront Co. concedes in this suit that it is obligated to and is paying libellant compensation under a policy of insurance which was taken out pursuant to the provisions of the aforesaid Act.

The libel and the impleading petition will be dismissed.

Appropriate findings of fact and conclusions of law will be filed with this opinion.