## MOLLICA v. CHILEAN LINE.

United States District Court
S. D. New York.
July 9, 1952.

Robert Klonsky, New York City, for plaintiff.

Purdy, Lamb & Catoggio, New York City, for defendant.

EDELSTEIN, District Judge.

The defendant has moved for judgment notwithstanding a verdict for the plaintiff, in a suit by a longshoreman for personal injuries sustained while working aboard defendant's vessel. Plaintiff was an employee of an independently contracted stevedore, engaged to load cargo into the holds of the Chilean Line steamship. The loading operation had commenced at 8:00 a. m. of August 18, 1949, the day of the accident, and the first gang continued to work until 6:00 p. m. or 6:15 p. m. A second shift started work at 7:00 p. m., and the accident causing injury to the plaintiff occurred in the #4 hold within a half hour. He contended that his injury was proximately caused by an unsafe and unseaworthy condition of the hold, consisting of a dangerously poised, heavy crate of cargo in an inadequately illuminated place to work.

■ Defendant urges, and the jury were charged, that when a ship owner surrenders control of a part of his ship to an independent contractor, his duty with respect to the surrendered part extends only up to the time the independent contractor assumes control. The owner is not responsible for an unsafe condition thereafter created by the contractor's employees. Lauro v. United States, 2 Cir., 162 F.2d 32, 34; Lynch v. United States, 2 Cir., 163 F.2d 97, 98; Grasso v. Lorentzen, 2 Cir., 149 F.2d 127, 129, certiorari denied 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444; see also Guerrini v. United States, 2 Cir., 167 F.2d 352, certiorari denied 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393. But the problem here arises over the issue of when the stevedore assumed control of the hold, with respect to the second or 7:00 p. m. shift. The court submitted to the jury, to determine as a question of fact, whether the shipowner or the stevedore exercised control of the hold between shifts, that is, between 6:00 p. m. or 6:15 p. m. and 7:00 p. m. The defendant argues that, from the

undisputed facts, the question of control was a legal one which should not have been submitted to the jury; and that a verdict should have been directed for the defendant on the ground that plaintiff's injury resulted from an unsafe condition created by the stevedore's employees after the stevedore had assumed control of the hold at 8:00 a. m.

The relevant facts adduced at the trial were that the stevedore performed an around-the-clock loading until the completion of the job. The day gang commenced work in the hold at 8:00 a. m. and "knocked off" at 6:00 p.m. or 6:15 p. m., leaving the hatch open and their tools in the hold. It also appears that the cargo crate was left by them in the position plaintiff describes as dangerous. But in a deposition taken pursuant to an examination of the defendant on a court order to give testimony as to the control of cargo in #4 hold before the plaintiff came to work, the third mate testified that he was responsible for the safe stowage of the cargo. He further gave testimony from which the jury could have found that he made an inspection of the hold during the disputed period. The mate also admitted that the ship was responsible for furnishing illumination in the hold, with a member of the crew being designated as a "lampman" in charge of furnishing cluster lights on extension cords which only he could plug into the resistor house. The fixed overhead lights were not permitted to be turned on.

■ I am of the opinion, on the basis of the above cited cases, that the issue of an independent contractor's control of a portion of a ship is a question of fact to be determined from the evidence, and that there was not such an absence of probative fact in this case to justify withdrawing the issue from the jury. The jury could reasonably have concluded, as an ultimate fact, that the ship exercised control over the #4 hold just prior to the commencement of the 7:00 p. m. shift. The ship's responsibility for the safe stowage of cargo,[1] coupled with the inspection[2] of the third mate dur-

---

1. Cf., Muratore v. United States, D.C., 100 F.Supp. 276, at page 280.

2. Cf. Guerrini v. United States, 2 Cir.,

167 F.2d 352, 354: "We cannot say that it was 'clearly erroneous' to find * * * that the respondent had not

ring the period in question is some evidence on the issue of control. Moreover, the ship's responsibility for providing illumination bears upon the issue. That responsibility, during the prior daylight shift, might have no relevance; but during a period when an oncoming night shift was awaited, such responsibility may well be found to take on relevant significance. The jury could have found that light was required at the commencement of the evening shift. Thus, it was a fair conclusion that control of the hold rested with the ship prior to 7:00 p. m. for the purpose of arranging for illumination necessary at that hour. Responsibility for providing illumination when it should be required, during a time when illumination may reasonably be expected to become necessary, is not unreasonably an indicium of control.[3] And it may well be taken, in conjunction with the ship's responsibility for safe stowage of cargo and the third mate's inspection, to indicate the absence of "complete control", Lauro v. United States, supra, 162 F.2d at page 34, or "exclusive and complete control", Muratore v. United States, D.C., 100 F.Supp. 276, 280, by the stevedore.

■ If, as the jury must be taken to have found, control over the hold vested in the ship immediately prior to the time plaintiff came to work, then he was entitled, under the warranty of seaworthiness, to commence work in a hold that was safe. It is no defense that the unsafe condition was created by the stevedore's employees after 8:00 a. m. when they first came aboard to assume control, if that conduct occurred prior to a time when control vested in the ship. The unsafe condition, under the jury's verdict, existed while the ship had control, and at the time the stevedore assumed control for the second shift.

■ The defendant also relies upon the principle enunciated in Byars v. Moore McCormack Lines, 2 Cir., 155 F.2d 587, and Bruszewski v. Isthmian S. S. Co., 3 Cir., 163 F.2d 720, that an employee cannot recover

for injuries received while doing an act to eliminate the cause of the injury. The plaintiff, it is contended, was injured while attempting to remove the dangerously poised crate from its dangerous position, and thus he was injured while performing an act to eliminate the cause of his injury. The situation is inapposite to the facts of the cited cases. Plaintiff was not hired to repair a defective condition. He was, on the contrary, entitled to rely on the seaworthiness of the hold, a state of affairs completely different from that where a defective condition is held out to a workman as unsafe and unseaworthy, with instructions to render it safe.

The defendant's motion for judgment will be denied.

---

surrendered control of the ship to the contractor. Indeed, as to the last it appeared that an officer of the ship was on watch on that day; presumably he made his rounds, including the deck."

3. Cf. Osnovitz v. United States, D.C., 103 F.Supp. 238, where it was held that control of a part of a deck involved the responsibility for its illumination.