## AHLGREN

v.

## RED STAR TOWING & TRANSP. CO., Inc.

No. 281, Docket No. 23115.

United States Court of Appeals, Second Circuit.

Argued June 10, 1954.

Decided July 14, 1954.

Before CHASE, Chief Judge, and FRANK and HINCKS, Circuit Judges.

In this suit, plaintiff, employed by the New York Trap Rock Corporation as captain of the Henry Kohl, its scow, sought damages for personal injury alleged to have been caused by defendant's negligence. The complaint alleged, and the facts showed, diversity of citizenship. The case was tried to a jury. At the time of the accident, defendant's tug, Ocean King, with the Henry Kohl in tow, was maneuvering to place the bow of the Henry Kohl under the stern of the barge Red Star No. 55, so that the two vessels could be towed in tandem. The No. 55 was lying at the north end of the Long Island Lighting Company's Port Jefferson dock. The barge Cape French was berthed at the dock approximately seventy feet astern of the No. 55, so that there was not enough room at the dock to maneuver the Kohl's bow squarely under the No. 55's stern. The tug, therefore, brought the starboard (outboard) bow corner of the Henry Kohl up to the starboard (outboard) stern corner of the No. 55, and ran a line between those corners. The plaintiff assisted in this tying up. The tug then maneuvered to bring the port (inshore) corners of the two vessels together so that the plaintiff and the captain of the No. 55 could make fast a line between these corners. In attempting to tie the port inshore corners of the two vessels, plaintiff threw a line, which was heavy, to the captain of the No. 55, but the line did not reach the latter. At this point, all three vessels were at a standstill. On a second attempt, plaintiff managed to get the line over to the No. 55. In all these maneuvers, plaintiff was acting under the orders of the Ocean King's captain. After the captain of the No. 55 had grasped this line, the Ocean King, without a signal or warning from the Kohl or the No. 55, started into motion astern. Plaintiff testified that while making the throws, he braced his left foot on or against the inside of the Henry Kohl's bow guard-rail. He also testified that, as a result of the motion, he was thrown across the Henry Kohl's bow guard-rail and his left leg was caught between the outside of this and the bumper of the No. 55. Plaintiff admitted that he knew he was required to keep his feet and legs inside the rail.

Counsel for the parties stipulated: "That the court will direct the jury to bring a special, written verdict on the questions whether they find contributory negligence on the part of the plaintiff, and if so, the extent or percentage thereof. Upon receipt of such a verdict, if the jury finds for the plaintiff, the court will then determine whether the law requires that recovery be reduced by 50% because of the contributory negligence

or reduce it by the percentage found by the jury."

The jury found for the plaintiff in the sum of $35,000, and found him guilty of contributory negligence in the amount of 15%. The trial judge reduced the verdict by 15%, to $29,750.00. Defendant appeals from the judgment entered on this verdict.

Abraham M. Fisch, New York City (Abraham M. Fisch, Sidney Schiffman and Daniel H. Greenberg, New York City, of counsel), for plaintiff.

Foley & Martin, New York City (Christopher E. Heckman and Francis A. Wade, New York City, of counsel), for defendant.

FRANK, Circuit Judge.

## 1. Defendant's negligence

 Defendant asserts the absence of proof of its negligence, and argues that the sole legal cause of plaintiff's injury consisted of his own action in putting his foot on or outside the bow rail.[1] But there was evidence from which the jury could reasonably find the following: Plaintiff, acting under the orders of the Ocean King, was attempting to complete the tying up of the Kohl and the No. 55, when the accident occurred; in throwing the line to the No. 55, plaintiff braced his left foot on or against the inside of the bow rail; all the vessels were then at a standstill; the captain of the Ocean King could not see the bow of the Kohl or the stern of the No. 55, and there was no lookout on the deck of the Ocean King to signal that the vessels had been tied together as ordered, or to give warning in case of accident; with affairs in this state, and before the tying of the port corners had

been completed, the Ocean King began to move in reverse without having given any warning or signal; it had not received any signal from either the Kohl or the No. 55 that the vessels were tied together; and plaintiff's expert witness testified that a tug, during such a tying up, should not start in motion without first receiving some sort of "all clear" signal. See The Pontin Bros., 2 Cir., 47 F.2d 595, where we held a lighter liable in negligence for starting in reverse without first receiving a signal from a deckhand that the tying up had been completed. We think the jury could reasonably infer that the sudden motion of the tug caused plaintiff to lose his balance, with the result that his left foot went over the bow rail. Remembering that questions of credibility are for the jury, we think that the trial judge correctly refused to direct a verdict for defendant, and that the jury could rationally conclude that defendant's negligence was the "proximate cause" of plaintiff's injury. Ondato v. Standard Oil Co., 2 Cir., 1954, 210 F.2d 233; Fodera v. Booth American Shipping Corp., 2 Cir., 159 F.2d 795, 797; Kilgust v. United States, 2 Cir., 191 F.2d 69.

## 2. Comparative negligence

Plaintiff, on this appeal, does not deny his contributory negligence. Defendant contends that this factor compels a 50% reduction of the damages.

The admiralty rule of evenly-divided damages in cases of injury to property[2] —although a highly desirable departure from the "harsh" common-law doctrine[3] which denies all relief to one suing for negligence if guilty of contributory negligence—has frequently received criticism as unfair. On that ground, vir-

---

[1]. Defendant cites The Authentic, D.C., 15 F.Supp. 780, affirmed In re Tice Towing Line, 2 Cir., 89 F.2d 1020. We think that case inapposite, since the decision quite clearly rests on the trial judge's disbelief of claimant's version of the accident.

[2]. The Schooner Catharine v. Dickinson, 17 How. 170, 171, 15 L.Ed. 233; The John Fraser, 21 How. 184, 16 L.Ed. 106;

The Maria Martin, 12 Wall. 31, 20 L. Ed. 251; The Manitoba, 122 U.S. 97, 7 S.Ct. 1158, 30 L.Ed. 1095; The North Star, 106 U.S. 17, 1 S.Ct. 41, 27 L.Ed. 91; The Morning Light, 2 Wall. 550, 17 L.Ed. 862; The Continental, 14 Wall. 345, 20 L.Ed. 801.

[3]. See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408, 74 S.Ct. 202.

tually every country except ours has abandoned it.[4] Nevertheless, we feel obliged to apply that rule until the Supreme Court or Congress instructs us otherwise. However, we are not similarly restricted in cases of maritime tort involving personal injuries.[5]

Apportionment of damages in such cases, on a comparative fault basis and without reliance on a statute,[6] began with the decision of Judge Addison Brown in The Max Morris.[7] On appeal, the specific ruling affirmed by the Supreme Court was that contributory negligence does not bar all recovery in a personal injury maritime tort suit; the Supreme Court said it left open the question of apportionment of damages.[8] Filling this gap by following Judge Addison Brown, we and several other courts, in such personal injury maritime tort cases, have applied the rule of comparative negligence.[9]

■ Defendant, however, urges that each of these rulings occurred in a situation in which a contractual or quasi-contractual relation existed between the person injured and the party held liable. Defendant argues that, since no such relation existed here, damages should have been reduced by 50%. We do not agree.

True, a "status" or relation may derive from contract; and a seaman has such status in respect of his ship, based partly on contract and partly on a noncontractual relation. See Sperbeck v. A. L. Burbank & Co., 2 Cir., 190 F.2d 449.[10] Thanks to Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, the courts now regard a stevedore, working on a ship, as one performing some of the traditional work of a seaman and therefore having a position of status *vis a vis* the ship or its owner.[11] However, when Judge Brown

4. Convention for the Unification of Certain Rules in the Matter of Collision, Art. IV, Third International Diplomatic Conference on Maritime Law at Brussels (1910) 4 American Journal of International Law (Supplement) 121. The countries adhering to the Brussels Convention are listed in Griffin on Collision (1949) 857. See also Gregory, Legislative Loss Distribution in Negligence Actions [1936] p. 53.

5. That the negligence action here is for a maritime tort, and that, accordingly, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply, see Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 410–411, 74 S.Ct. 202.

6. The Jones Act, 46 U.S.C.A. § 688, by incorporating the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., provides for apportionment according to fault. The instant suit was not within the Jones Act.

7. D.C.S.D.N.Y.1885, 24 F. 860.

8. The Max Morris, 1890, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586.

9. Stokes v. United States, 2 Cir., 144 F.2d 82, 87–88; Kreste v. United States, 2 Cir., 158 F.2d 575, 580; Guerrini v. United States, 2 Cir., 167 F.2d 352; Portel v. United States, D.C.S.D.N.Y., 85 F.Supp. 458, 462; Palardy v. United States, D.C. E.D.Pa., 102 F.Supp. 534; Badalamenti v. United States, D.C., 67 F.Supp. 575,

modified on other grounds, 2 Cir., 160 F. 2d 422.

10. There we pointed out that the word "status" is ambiguous, and that a contract may create a sort of "status." We said, 190 F.2d at page 451: "Some status claims are partly contractual, partly not. This appears when one considers that frequently a contract itself creates a sort of status, since it often gives birth to obligations, legally imposed by the courts, for reasons of policy, which the parties to the contract did not intend or contemplate, so that many so-called contractual obligations may be viewed as to some extent quasi-contractual." See also Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978 and notes 42 and 43; U. S. v. Forness, 2 Cir., 125 F.2d 928, 936 note 25; and authorities there cited; Parev Products Co. v. I. Rokeach & Sons, 2 Cir., 124 F.2d 147, 149; Beidler & Bookmyer v. Universal Ins. Co., 2 Cir., 134 F.2d 828, 829–831. Stone, Equitable Conversion By Contract, 13 Col.L.Rev. (1913) 369, 371; Martin v. Campanaro, 2 Cir., 156 F.2d 127, 130, note 5; Lenhoff, Optional Terms and Required Terms in the Law of Contracts, 45 Mich.L.Rev. (1946) 39.

11. At least to the extent of having the right to recover for unseaworthiness. Liability for unseaworthiness in such a case is imposed without proof of negli-

decided The Max Morris in favor of a stevedore, the Sieracki doctrine had not yet been established, and Judge Brown made no reference whatever to the stevedore's status. Nor, significantly, did the courts, in any of the subsequent cases we cited above, mention that the plaintiffs had such a contractual or other status; this goes to show that such a relation has not been deemed a necessary condition of apportionment.

In Guerrini v. United States, 2 Cir., 1948, 167 F.2d 352, plaintiff, employee of a subcontractor hired to clean a ship's boiler, sued the ship for negligently failing to provide for his safety as a result of which he suffered injury.[12] This court (per Learned Hand, J.) decided (p. 354) that plaintiff was unlike a stevedore, and consequently could not recover for unseaworthiness under the Sieracki doctrine.[13] Nevertheless, we held, 167 F.2d 352, pages 355–356, that plaintiff (on a proper finding of facts) could recover for negligence, as a "business guest," and that, as plaintiff was contributorily negligent, damages should be apportioned according to the percentage of fault.[14] As we then (1948) viewed such a plaintiff, he had neither a contractual nor a quasi-contractual relation with the ship or its owner; and, since plaintiff brought suit under the Suits-In-Admiralty Act, he could not avail himself of any statutory provision relative to comparative negligence. Thus this court has unmistakably sustained damage-apportionment in a personal-injury suit for a maritime tort resting on negligence only.[15] See also Portel v. United States, D.C.S.D.N.Y., 85 F.Supp. 458.

To be sure, were we deciding Guerrini's case today, we would hold that he had status with respect to defendant, in the light of Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202. There, in sustaining plaintiff's right to recover for unseaworthiness (i. e., without proof of defendant's negligence), the Supreme Court, for the first time, explicitly assimilated a repairman (like Guerrini) to a seaman under the Sieracki doctrine. The plaintiff there also claimed for the negligence of the ship's owner. The Court, sustaining that claim, held that plaintiff's contributory negligence called for apportionment, but it treated the negligence claim and the apportionment as wholly independent of the Sieracki rationale.[16] Moreover, as we decided

gence; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

12. The case, brought under the Suits-In-Admiralty Act, 46 U.S.C.A. § 741 et seq., was tried by a judge without a jury.

13. See also Rich v. United States, 2 Cir., 192 F.2d 858; O'Connell v. Naess, 2 Cir., 176 F.2d 138, 140.

14. We remanded for a further finding, saying: "We hold that if the judge supplies the finding we mention the faults will be in the proportion of one to four and a decree will be entered for one fourth of the award which he made."

15. One might conceivably say that, whenever a defendant owes a legal obligation to exercise due care to a plaintiff, that obligation ("imposed by law") creates a status or relation between the parties. But then a status or relation would exist in every case of negligence, so that defendant's contention here would become meaningless.

16. The Court said, 346 U.S. at page 413, 74 S.Ct. at page 207: "The fact that Sieracki upheld the right of workers like Hawn to recover for unseaworthiness does not justify an argument that the Court thereby blotted out their long-recognized right to recover in admiralty for negligence." In the accompanying footnote 6, the Court said: "Illustrative of the unbroken line of federal cases holding that persons working on ships for independent contractors or persons rightfully transacting business on ships can recover for damages due to shipowners' negligence are: Leathers v. Blessing, 1882, 105 U.S. 626, 26 L.Ed. 1192; The Max Morris, 1890, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; Gerrity v. The Bark Kate Cann, D.C.1880, 2 F. 241; The Helios, D.C.1882, 12 F. 732, decision by Judge Addison Brown; Grays Harbor Stevedore Co. v. Fountain, 9 Cir., 1925, 5 F. 2d 385; Tidewater Associated Oil Co. v. Richardson, 9 Cir., 1948, 169 F.2d 802; Brady v. Roosevelt S.S. Co., 1943, 317 U.S. 575, 577, 63 S.Ct. 425, 87 L.Ed. 471. See also cases collected in 44 A.L.R. 1025–1034."

Guerrini's case some five years before the advent of Pope & Talbot, Inc. v. Hawn, supra, our decision in Guerrini is a clear precedent, in this Circuit, for apportionment, minus any contractual or other relation between the parties, and without the aid of any statute. We adhere to that precedent so far as it deals with comparative negligence.[17]

Affirmed.

---

[17]. Although not a ground of our decision, we note in passing that it is perhaps arguable that, as plaintiff was acting under the orders of defendant's captain, there was a noncontractual relation between plaintiff and defendant.