## BERNSTEIN v. OLIAN et al.

District Court, S. D. New York.

May 11, 1948.

---

Hatch, Wolfe & Nash, of New York City (Benjamin H. Siff, of New York City, of counsel), for plaintiff.

Leo F. Potts, of New York City (Charles H. Lane and I. Maurice Wormser, both of New York City, of counsel), for defendant Ems Corp.

RIFKIND, District Judge.

After the jury had rendered a verdict in favor of the plaintiff against defendant Ems Corporation, for $102,500 and exonerating defendants Olian and Cantor, defendant Ems Corporation moved to set aside the verdict and dismiss the complaint or for a new trial.

The jury could find as to the Ems Corporation (hereinafter Ems): (1) Ems was the owner of the building and the lessor of the store premises where the accident causing the injuries suffered by the plaintiff occurred; (2) Ems had reserved the right to enter the premises to make repairs; (3) Ems was obliged to make repairs at its own cost if the damage or condition was not caused by the negligence of the tenant; (4) Ems prohibited the tenant from painting, drilling into or in any way marring or defacing any part of the demised premises; (5) the repair of the dangerous condition which caused the electric fixture and part of the ceiling to fall and strike the plaintiff called for both drilling and painting; (6) Ems employed a large staff of maintenance employees in connection with the operation of the multistory building of which the store premises were a portion; (7) Ems' building superintendent frequently visited the store premises in connection with his duties; (8) for some time prior to the fall of the electric fixture, the tenant on the floor above the store premises trundled heavy parcels in such a manner as to cause violent vibration of the ceiling of the store premises; (9) a considerable time before the accident, notice of these vibrations was given to the landlord's agents by the tenants, Olian and Cantor; (10) immediately after the accident Ems' employees took away the debris; (11) shortly thereafter Ems caused the repairs to be made at its own expense and on its own initiative; (12) Ems had control of the site of the danger; (13) reasonable care required inspection of the ceiling and its lighting fixture, at least after notice of the stresses to which the ceiling was subjected; (14) such inspection was simple and could readily be performed; (15) inspection would have revealed the danger; (16) Ems was negligent in that by the exercise of reasonable care it could have discovered the condition, realized that it involved an unreasonable risk to business visitors and made the condition safe. Restatement of Torts, § 343; Restatement of Torts, § 361.

Section 361 reads as follows:

"A possessor of land, who leases a part thereof and retains in its own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved therein and (b) could have made the condition safe."

Ems relies upon the leading case of Cullings v. Goetz, 1931, 256 N.Y. 287, 176 N.E. 397, to exonerate it from liability. That case stands essentially for the proposition that the lessor's covenant to repair is not sufficient to vest it with control of premises so as to subject the lessor to liability to a business visitor of the lessee. In that case it was found that the lessee's possession and dominion were exclusive and complete, page 290 of 256 N.Y., page 398 of 176 N.E. Indeed, the court said, at the same page:

"We assume the possibility of so phrasing and enlarging the rights of the lessor that occupation and control will be shared with the lessee."

And the final caveat of Judge Cardozo is significant, page 294 of 256 N.Y., page 399 of 176 N.E.:

"Nothing said in this opinion has relation to a case where a part only of the building is in possession of the lessee, and the dangerous condition is in the ways or other parts retained by the lessor".

By its own admonition, therefore, Cullings v. Goetz does not govern the case at bar.

Cullings v. Goetz was followed by Lafredo v. Bush Terminal Co., 1933, 261 N.Y. 323, 185 N.E. 398, which applied some of Cardozo's rhetoric to reach a harsh result from which Judge Crane dissented. Potter v. N. Y. Ontario and Western Ry. Co., 1933, 261 N.Y. 489, 185 N.E. 708, followed the Cullings case. There the court found an exclusive control in the tenant under circumstances which permitted Judge Crane to concur in the result. Appel v. Muller, 1933, 262 N.Y. 278, 186 N.E. 785, 89 A.L.R. 477, was the first departure from the broad sweep of Cullings v. Goetz and held that the landlord's right to enter for the purpose of making repairs was sufficient to impose liability upon the landlord to a passerby injured on the public street.

In Scudero v. Campbell, 1942, 288 N.Y. 328, 43 N.E.2d 66, the court held, in an action by a visitor of a tenant against the landlord for injury suffered by the visitor when a step leading from the front stoop of a house gave way, that post-accident repairs by the landlord provided sufficient ground to sustain a finding of control by the landlord. An interesting aspect of the case is that it involved a one-family house which had been leased in its entirety to the tenant. To the same effect but involving a two-family house, is Antonsen v. Bay Ridge Savings Bank, 1944, 292 N.Y. 143, 54 N.E.2d 338.

 The case at bar involves a lease of only a portion of the premises; and since the evidence justified a finding that the landlord had retained control over the ceiling and the attachments of the electric fixtures to the ceiling, it seems to me that judgment against the landlord is not foreclosed by Cullings v. Goetz. In the light of the other evidence relating to the breach of duty by the landlord, the verdict can be readily sustained against Ems Corporation. The motion to dismiss must, therefore, be denied.

It is asserted, however, that the verdict must be set aside and a new trial ordered because the jury's inculpation of the landlord is inconsistent with its exoneration of the tenant. In the following discussion I shall assume that there is such inconsistency. The question is whether that compels the setting aside of the verdict.

Defendant has cited much New York law holding that such inconsistency is fatal. See Rowell v. Hutzler Lumber Co., 4th Dept. 1930, 228 App.Div. 158, 239 N.Y.S. 192, affirmed 255 N.Y. 581, 175 N.E. 322; Lillian Bros. v. City of Ilion, 4th Dept. 1928, 224 App.Div. 688, 229 N.Y.S. 2d 44; Clawson v. City of Ithaca, 3d Dept. 1925, 214 App.Div. 333, 212 N.Y.S. 433; Wilks v. N. Y. Telephone Co., 4th Dept. 1924, 208 App.Div. 542, 203 N.Y.S. 665; Perry v. American Bible Society, Sup.Ct. N.Y. 1946, 67 N.Y.S.2d 319.

 However, the question as to whether the verdict should be set aside and a new trial granted is one to be determined by federal rather than by state law. Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350; Kaufman v. Atlantic Greyhound Corp., D.C.S.D.W.V., 1941, 41 F.Supp. 252.

The defendants have cited no federal rule of law nor any federal authorities on the subject. The only federal cases which I have discovered deal with inconsistency in criminal verdicts and only one case involving a civil verdict. Hamilton v. Thurber, D.C.D.Minn. 1944, 56 F.Supp. 826, reversed on other grounds sub. nom. Northwest Underwriters v. Hamilton, 8 Cir., 1945, 151 F.2d 389, is unfavorable to defendant's position.

 Be that as it may, it seems to me that Ems Corporation is not free to complain of inconsistency for the following reason:

 The jury was most explicitly charged that it could find against one or both of the defendants. This charge was given

without objection on the part of either of the defendants. Ems Corporation having acquiesced in having the case submitted to the jury on that basis, authority is legion, both before and since Rule 51, F.R. Civ.Proc., that it is not now free to relitigate the matter because the verdict has gone other than it had anticipated. To move for a new trial on the basis of inconsistency of the verdict when an unobjected to instruction permitted the alleged inconsistency, falls within the prohibition of Rule 51. See, e. g., Railway Co. v. Heck, 1880, 102 U.S. 120, 26 L.Ed. 58; Comparet v. U. S., 10 Cir., 1947, 164 F.2d 452; Rittgers v. U. S., 8 Cir., 1946, 154 F.2d 768; Bercut v. Park Benziger & Co., 9 Cir., 1945, 150 F.2d 731; Van House v. Acorn Steel Co., 3 Cir., 1944, 144 F.2d 204.

 Nor do I observe here such a miscarriage of justice as would justify the granting of a new trial even in the absence of timely objection to the charge. The Circuit Courts of Appeals have refused to consider assignments of error not preceded by appropriate lower court action unless such refusal would result in gross injustice.[1] The exercise of this Court's discretion should be based on similar considerations. The plaintiff, had it so chosen, could have brought the action against the landlord alone without joining the tenant as a party. It is not suggested that contribution is possible between these two alleged joint tort feasors; nor is there any allegation of a claim over on the part of the landlord against the tenant. Assuming, therefore, that the verdict against the Ems Corporation cannot be logically assimilated to the verdict which exonerates the tenant, I nevertheless find no such inherent injustice in the jury's finding as to warrant the setting aside of the verdict.

Were the objection made by the plaintiff a different question would be presented.

 The only other point which requires mention is the defendant's contention that the amount of the verdict is excessive. The nature of the injury was such that this objection is, in my judgment, without any merit whatever.

Motion denied.

---

[1] See, e.g., Fricke v. General Accident, Fire and Life Assur. Corp., 8 Cir., 1932, 59 F.2d 563, certiorari denied 287 U.S. 662, 53 S.Ct. 221, 77 L.Ed. 571: "While it is true that an appellate court, within its sound discretion, may * * * consider manifest errors occurring during the trial which have not been properly preserved and presented on appeal, this should be done only when such action is necessary to prevent gross miscarriage of justice." Page 564 of 59 F.2d. Helvering v. Rubin-stein, 8 Cir., 1942, 124 F.2d 969: "To prevent a plain injustice, an appellate court may notice obvious errors in either criminal or civil cases, even though not properly called to the attention of the trial court or saved for review. * * * But this right to disregard the rule that an appellate court will not ordinarily consider issues of law or fact not raised below, is a right to prevent a clear miscarriage of justice apparent from the record * * *." Page 972 of 124 F.2d.