**BERNSTEIN v. EMS CORPORATION et al.**

**No. 191, Docket 21247.**

United States Court of Appeals
Second Circuit.

May 24, 1949.

---

Leo F. Potts, New York City (I. Maurice Wormser, Charles H. Lane and Sidney J. Loeb, New York City, of counsel), for appellant.

Hatch, Wolfe & Nash, New York City (Barent Ten Eyck and Benjamin H. Siff, New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is a negligence action to recover for personal injuries sustained by the plaintiff through the fall of an electric lighting fixture while he was a business visitor in the store of Olian & Cantor. They were in possession of the store under a lease from Ems Corp., owner of the building in part of which the store was located. The lighting fixture was attached to a ceiling beam. When Mr. Olian pulled the switch cord to turn on the light, the entire fixture fell and part of it, together with pieces of plaster from the ceiling, struck the plaintiff, causing the injuries complained of. His action was brought against both the tenants and the landlord. At the conclusion of the evidence the landlord moved for dismissal of the complaint on the ground that the evidence was insufficient to establish any liability on its part. The motion was denied and the jury returned a verdict exonerating the tenants and awarding the plaintiff damages of $102,500 against the landlord. The landlord then moved to set aside the verdict and dismiss the complaint or to grant a new trial. This motion the trial judge denied in an opinion reported as Bernstein v. Olian, D.C., 77 F.Supp. 672. From the judgment entered on the verdict Ems Corp. has appealed.[1]

There is no dispute as to the facts. The appellant acquired ownership of the building in November 1942. At that time Olian & Cantor were in possession of the store under a lease made in 1938 with the former owner of the building. In 1943 they executed a lease with the appellant which was in effect when the accident occurred on July 2, 1945. The fixture which fell consisted of a metal base-plate attached to the concrete ceiling beam by screws, an ornamental canopy concealing the base-plate,

---

[1] Subsequently the parties stipulated that the verdict should be reduced to $100,000 as this was all the plaintiff had demanded in his complaint.

and a depending chain which carried at its lower end a glass globe and the electric light bulb. The base-plate had been installed before the tenants took possession under their 1938 lease. During their occupancy under that lease the ornamental canopy and globe were purchased by them and installed by the seller. This increased the weight of the parts supported by the base-plate. The defect which caused the fixture to fall resulted from the way in which the base-plate was secured to the ceiling beam. The base-plate had four openings for the insertion of screws but only two screws were used. It was established by expert testimony that these screws were not long enough, after passing through the base-plate and the plaster above it, to penetrate into the concrete of the ceiling beam a sufficient distance to provide a safe attachment. Although the fixture had existed for several years before the accident occurred, the jury could properly find that it created a dangerous condition in the store premises.

 A person in possession of real estate is liable for injuries caused to a business visitor by a dangerous condition existing in the premises if he knows of the danger or by the exercise of reasonable care could discover it, and fails to warn the business visitor. A.L.I. Restatement of Torts, § 343. When the premises are occupied by a tenant under a lease, the duty of discovering the danger and warning the business visitor generally falls upon the tenant, and a similar duty is not imposed upon the landlord who is ignorant of the danger merely because the lease requires him to make repairs. Cullings v. Goetz, 256 N.Y. 287, 290, 176 N.E. 397. That decision, however, 256 N.Y. at page 294, 176 N.E. at page 399, expressly excluded from its ruling the case "where a part only of the building is in possession of the lessee, and the dangerous condition is in the ways or other parts retained by the lessor." The trial judge relied upon this exception in distinguishing the Cullings case.[2] The lease which the Ems Corp. gave Olian & Cantor reserved to the lessor the right to enter the premises to make necessary repairs and forbad the lessees to "paint, drill

into or in any way mar or deface any part of the demised premises or the building of which they form a part." Since the trial judge was of opinion that to correct the dangerous condition in the lighting fixture would have required both drilling and painting, he concluded that "the evidence justified a finding that the landlord had retained control over the ceiling and the attachment of the electrical fixtures to the ceiling." The landlord argues that this is a strained and overtechnical construction of the lease, particularly since another clause required the lessees to "take good care of the demised premises, and of the fixtures therein," and that under the doctrine of Cullings v. Goetz, supra, Ems Corp. should have been held free from liability. But we do not find it necessary to decide between these conflicting interpretations of the lease.

Assuming arguendo that the landlord did retain control over the site of the dangerous condition, nowhere in the record is there any basis for finding that it received any notice of the danger or could by the exercise of reasonable care have discovered it. A landlord is under no absolute duty to maintain in safe condition those portions of the building over which he reserves control. Unless he knows or in the exercise of reasonable care ought to know, of the existence of the defective condition, liability does not attach to him. A.L.I. Restatement of Torts, § 361; Hirsch v. Radt, 228 N.Y. 100, 126 N.E. 653; Kramer v. Stone, 176 App.Div. 549, 551, 163 N.Y.S. 578. The plaintiff concedes that Ems Corp. had no actual notice. Nor was there any evidence of conditions which should have caused the lessor to suspect the danger. Mr. Olian, it is true, testified that jarring and vibration of the ceiling was frequently caused by the moving of heavy cases of rayon by the tenant who occupied the floor above the store premises and that on one occasion he complained about it to the superintendent of the building. But the date of this complaint was early in 1942, before Ems Corp. had acquired title. Hence notice of the jarring and vibration given to the superintendent was not notice to an agent of the appellant. And the vibrations

---

2 See his review of the New York cases in 77 F.Supp. 672.

did not produce any visible effects, for there were no bulges or cracks in the ceiling and no other lighting fixture had ever fallen. In short we can see no basis whatever for charging the lessor with notice of the faulty installation of the fixture. To have discovered the defect, it would have been necessary to climb up on a ladder, remove the canopy and extract the screws from the base-plate to make sure they were of proper length. And since nothing pointed to this particular fixture as defective, such an inspection would have had to be made of all the electric fixtures in the ceiling. We are clearly of opinion that when there is nothing to suggest faulty installation, the lessor's duty of "reasonable care" does not require him to make that sort of an inspection. To hold the appellant liable would in effect make the landlord an insurer of the safety of business guests. That is not the law. The lessor's motion to dismiss for failure of proof of negligence should have been granted. Accordingly the judgment must be reversed and the complaint dismissed. It is so ordered.