William R. MORGAN, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION,
Defendant.

No. 79 Civ. 3847 (RWS).

United States District Court,
S. D. New York.

Nov. 7, 1980.

Elkind & Lampson, P.C., New York City, for plaintiff; Arnold B. Elkind, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant; Henry W. Herbert, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff William Morgan ("Morgan") commenced this action against defendant Consolidated Rail Corporation ("Conrail") seeking damages under the Boiler Inspection Act, 45 U.S.C. § 23[1] and the Federal Employers' Liability Act (the "F.E.L.A."), 45 U.S.C. § 51[2] for the loss of an eye sustained while under Conrail's employ. Morgan, a freight trainman, was struck in the face by a bottle thrown by an unidentified youth through the open side window of the locomotive cab in which Morgan was riding. The damaged left eye had to be removed, and he now wears a prosthesis. Morgan claims the injury occurred due to Conrail's breach of its duties under the above statutes. The case was tried to a jury with the question of liability turning on evidence of both parties' awareness of the danger, steps taken to alleviate the

1. The Boiler Inspection Act, 45 U.S.C. § 23, provides in pertinent part:
   It shall be unlawful for any [railroad] to use or permit to be used on its line any locomotive unless said locomotive, ... and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier, without unnecessary peril to life or limb....

2. The Federal Employers' Liability Act, 45 U.S.C. § 51, provides in pertinent part:
   Every ... railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such [railroad], or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

problem, and the feasibility of alternative approaches or additional measures. After a three day trial, the jury returned the following special verdict:

## SPECIAL VERDICT

1. Is plaintiff William Morgan entitled to recover on his claim under the Boiler Inspection Act?

Yes ____

No ✕

If your answer to question 1 is "yes," proceed to question 3 and do not answer question 2. If your answer is "no," proceed to question 2.

2. Is plaintiff William Morgan entitled to recover on his claim under the Federal Employers' Liability Act?

Yes ✗

No ____

If your answer to either question 1 or question 2 is "yes," answer question 3.

3. If your answer to either question 1 or question 2 is "yes," what amount do you find, without any reduction for any negligence on plaintiff's part, will fairly and adequately compensate plaintiff for the injury he sustained?

$ _710,000_

If your answer to question 2 is "yes," answer question 4.

4. If your answer to question 2 is "yes," to what extent, if any, did plaintiff's negligence contribute to his accident? (Express in percentage).

____25____ %

[Signature]
Foreman 6/17/80

Morgan now moves pursuant to Fed.R. Civ.P. 50(b) for the entry of judgment in the full amount of damages as found by the jury in answer to question 3, notwithstanding the jury's finding in response to question 4 that Morgan was himself 25% negligent. Morgan also moves for the entry of judgment nunc pro tunc June 17, 1980. Conrail cross-moves under Rule 50(b) and 59 for judgment notwithstanding the verdict or for a new trial. Alternatively, Conrail seeks a reduction of the allegedly excessive verdict returned by the jury. For the reasons set forth herein Conrail's motion for a new trial will be granted subject to Morgan's filing a remittitur of damages; all other motions are denied.

Conrail seeks to set aside the verdict as inconsistent, contending specifically that the jury's failure to find that the locomotive on which Morgan was riding violated the duty imposed by the Boiler Inspection Act eliminates any basis for a finding of negligence under the F.E.L.A. on Conrail's part. This is so, Conrail avers, since the claim of negligence was based on an alleged unsafe condition in the locomotive—i. e., the absence of screens or similar protective covering on the side windows, rendering the "said locomotive . . . and all parts and appurtenances thereof" not "in proper condition and safe to operate in the service to which the same are put . . . without unnecessary peril to life or limb." 45 U.S.C. § 23.

■ No cases highlighting such a special verdict involving these two statutes have been discovered. In the interest of preserving the Seventh Amendment right to trial by jury, there inheres the general rule that a court should reconcile the jury's verdict if at all possible. *See Gallick v. Baltimore & Ohio R. R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Henry v. A/S Ocean*, 512 F.2d 401, 406 (2d Cir. 1975).

■ There are decisions from this circuit construing the analogous problem of apparently inconsistent special verdicts in maritime personal injury cases involving claims of common law unseaworthiness and statutory negligence, and some of them would lend support to Conrail's argument that in

this case there could be no breach of a duty to keep the workplace reasonably safe where it was not found to be in improper condition or unsafe in the first place. *See Bernardini v. Rederi A/B Saturnus*, 512 F.2d 660, 664 (2d Cir. 1975). It is, however, possible to rationalize the result reached. The jury could well have concluded that the locomotive, with its special strength glass windows and without alternative means of ventilation, was "in proper condition and safe to operate . . . without unnecessary peril to life or limb" but that Conrail simply was negligent, under the circumstances, in not adding screens, or installing the windows so as to provide maximum ventilation with less exposure, or in the final analysis, just doing something more than it did to minimize the likelihood of such an occurrence by providing alternative ventilation. *Cf. Mileski v. Long Island Railroad Co.*, 499 F.2d 1169, 1171 (2d Cir. 1974) (failure to enforce the wearing of company-issued goggles held to be negligence under F.E.L.A.).

In any event the law "at times recognizes a jury's right to an idiosyncratic position, provided the challenged verdict is based upon the evidence and the law." *Malm v. United States Lines*, 269 F.Supp. 731 (S.D.N.Y.) (Weinfeld, J.), *aff'd mem.* 378 F.2d 941 (2d Cir. 1967). *See Henry v. A/S Ocean, supra; Ianuzzi v. South African Marine Corp., Ltd.*, 510 F.2d 950, 955 (2d Cir. 1975); *Bolan v. Lehigh Valley R. Co.*, 167 F.2d 934, 936–37 (2d Cir. 1948).

■ Finally, Conrail effectively waived any claim of error on this ground of inconsistency, by failing to object to the court's instructions which invited the jury to so find, or to the form of verdict proposed. *Lopez v. Oldendorf*, 545 F.2d 836, 839 (2d Cir. 1976), *cert. denied*, 431 U.S. 938, 97 S.Ct. 2650, 53 L.Ed.2d 256 (1977); *Rubin v. United States*, 380 F.Supp. 1176, 1179–80 (W.D.Pa.1974), *aff'd mem.* 515 F.2d 507 (3d Cir. 1975); *Bernstein v. Olian*, 77 F.Supp. 672, 674–75 (S.D.N.Y.1948), *rev'd on other grounds*, 174 F.2d 880 (2d Cir.), *cert. denied*, 338 U.S. 873, 70 S.Ct. 144, 94 L.Ed. 535 (1949); Fed.R.Civ.P. 51.

■ Conrail and Morgan both move for judgment. n. o. v. on the basis that there was no support in the evidence for the jury findings of negligence, and of contributory negligence, respectively. In ruling on such motions the court must determine "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970). *See Bevevino v. Saydjari*, 574 F.2d 676, 683 (2d Cir. 1978); *Klein v. Tabatchnik*, 459 F.Supp. 707, 711 (S.D.N.Y. 1978). In other words, where there is conflicting evidence or insufficient evidence to make a one-way verdict proper, j. n. o. v. should not be granted. *Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d 532, 536 (2d Cir. 1965), *cert. denied*, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966). See 5A Moore's Federal Practice ¶ 50.07[2] (1979).

■ Evidence was presented upon which the jury could have found, simply, that negligence lay in Conrail's failure to add screens over the windows, or to install the windows more inventively with safety in mind—bearing in mind that trainmen riding in the cab in the weather conditions prevailing at the time of the accident need ventilation and yet must be protected from the dangers of exposure through fully-opened windows.

■ Morgan's contention that no evidence supports the jury's finding of 25% contributory negligence is also deficient. The jury had before it uncontradicted evidence that the window in question opened and closed freely, that when closed it was "almost bulletproof," that Morgan was aware of the danger of such vandalism, and that he even saw the youths involved in this incident some moments in advance up along the track, as the train moved toward them. There was therefore evidence to support the jury's apportionment of fault.

Conrail also seeks a new trial on the ground that the jury's verdict is against the weight of the evidence. On such motion the trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner. *Bevevino v. Saydjari, supra*, at 683–84. The court is not, however, to function merely as a second fact finder wielding a veto power if it disagrees with the first. The standard has been stated as follows:

> The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice.

*Id.* at 684, quoting 6A Moore's Federal Practice, ¶ 59.08[5] at 59–60 (1979).

Additionally, courts have long been, and should be especially reluctant to overturn a jury finding of negligence in an F.E.L.A. case. *See Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Mileski v. Long Island Railroad Co., supra*, at 1171; *Fox v. New York R. Co.*, 267 F.2d 532, 534 (1959).

In the light of these principles I decline to set aside the verdict for a new trial. It is not "quite clear" to the court that "the jury has reached a seriously erroneous result" amounting to "a miscarriage of justice." There was evidence that the U.S. Department of Transportation supports the use of special strength glass windows as opposed to other methods of protection for train personnel against such vandalism. There was no clear evidence of the practicability of an alternative method of ventilation for the purpose of cooling, and not merely for venting fumes—and there was some evidence to the contrary. The evidence conflicted on whether a union representative or anyone else specifically had requested of Conrail an alternative, more secure system of ventilation.

Apparently this jury chose—as it may—not to take the Department of Transportation's position as dispositive, to resolve certain disputes in the evidence in favor of Morgan, and to find that there was something more Conrail could and should have done, in the exercise of reasonable care under all the circumstances, to prevent such a thing from happening. There is insufficient ground, if any, for upsetting this jury finding. *See Bevevino v. Saydjari, supra,* at 685.[3]

▪ Conrail also seeks a new trial on the ground that certain portions of Morgan's exhibit 5, the transcript of a hearing of the House Subcommittee on Crime pertaining to railroad vandalism, were highly prejudicial, inflammatory, irrelevant and hearsay, and thus the document erroneously was allowed into evidence. Pertinent portions of that public document were admitted on the issue of the knowledge and information of this type of danger available to Conrail. This evidence was relevant under Fed.R. Evid. 401, on the issue of liability, and the verdict will not be overturned on the basis of its admission.

▪ Conrail seeks relief on the ground that the jury's $710,000 award is clearly and unjustifiably excessive. This motion will be granted, although the decision to do so is both difficult and painful for the jury's resolution of the question of damages is not to be disturbed unless there is reason to believe it was the result of passion, bias or prejudice, or that it is so excessive as to shock the conscience of the court as a "denial of justice." *Mileski v. Long Island Railroad Co., supra,* at 1173; *Bevevino v. Saydjari,* 76 F.R.D. 88, 94–95 (S.D.N.Y.1977); *aff'd,* 574 F.2d 676 (2d Cir. 1978). *Accord, Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 364–66 (5th Cir. 1980). The court's duty has been set forth as follows:

> [The trial judge's] power to set aside a verdict as excessive implies that he has a duty to do so when he conscientiously

believes that the jury has exceeded the bounds of propriety.

*Dellaripa v. New York, N. H. & H. R. Co.,* 257 F.2d 733, 735 (2d Cir. 1958). *See Dullard v. Berkeley Assoc. Co.,* 606 F.2d 890, 896 (2d Cir. 1979).

Conrail points out that compared to Morgan's most recent salaries of from $25,000 to $30,000, the full $710,000 award, if invested in funds paying 5¼% to 7% simple annual interest, would earn from $37,275 to $49,700—leaving untouched the principal. *See Dullard v. Berkeley Assoc. Co., supra,* at 895. This fact would not necessarily defeat the award, considering the element of pain and suffering and assuming the preponderance of the evidence indicated total disability for Morgan's stipulated 25.9 years of work expectancy.

In a number of recent cases, courts have upheld rather large jury verdicts for eye injuries, while sometimes commenting on the extreme generosity of the award. In *Mileski v. Long Island Railroad Co., supra,* the Court of Appeals affirmed as not "shocking to the conscience" or a "denial of justice" a $250,000 award under the F.E. L.A. to an 18 year old trackman who lost his vision in one eye in a work accident. The court did note:

> [T]he award represents what appears to be an all-time monetary high for loss of an eye and is considerably in excess of other awards rendered during recent years for substantially the same injuries (footnote omitted).

499 F.2d at 1173.

Two years ago, in *Bevevino v. Saydjari, supra,* the Court of Appeals applying the same test, affirmed the trial court's refusal to overturn a jury verdict of $550,000 for loss of an eye due to medical malpractice following an auto accident. The court noted the cautionary words in *Mileski, supra,* concerning the generosity of the award, stating that "[w]ere loss of Bevevino's eye and eyesight the only injuries in issue, we

---

**3.** Conrail also moves for a new trial on the ground that the jury erred in finding Morgan only 25% contributorily negligent. Although this motion is considered under a different standard than is Morgan's motion for j. n. o. v. directed at the contributory negligence finding, the court rejects this challenge for similar reasons.

might well hold that, in view of his annual earnings and life expectancy, the award was excessive (footnote omitted.)" 574 F.2d at 688. The plaintiff had been a some-time professional soccer player with a stipu-lated undiscounted $374,000 loss of earnings for his 34 year life expectancy. However, the court was strongly influenced by the undisputed testimony of a psychiatrist that the plaintiff's injury had turned him into a totally disabled "suicide-prone recluse" who was "fated to a life of unrelieved misery." *Id.* at 688. The trial court had contrasted the case with those in which the defendant offers evidence that the plaintiff is still employable. 76 F.R.D. at 95. Thus the Court of Appeals found that the full emo-tional and physical consequences of the in-jury "sets this case apart from simple eye injury cases," and approved the jury award containing a substantial pain and suffering element. 574 F.2d at 688.

The Court of Appeals for the Fifth Cir-cuit very recently upheld as "very generous but not shocking to our conscience" a jury verdict of $240,000 for a seaman who lost an eye when a taut line suddenly parted, and had a prosthesis put in. *Allen v. Sea-coast Products, Inc., supra* at 366. In *Allen* as in the case at bar, medical expenses and loss of past earnings were undisputed, com-prising about $40,000, while future wage loss and pain and suffering had been much in dispute. Assuming total disability, ex-pert testimony had established the present value of the plaintiff's future earnings for his remaining 30 years of work at from $150,000 to $300,000. The court, consider-ing the evidence that the plaintiff was in fact employable at or near his previous wage and finding "it is fair to say that the jury could conclude that Allen's future earning capacity was impaired, though not totally," concluded that $200,000 for this element together with general pain and suf-fering was not unreasonable. *Id.* at 365. *See also Penetrante v. United States,* 604 F.2d 1248 (9th Cir. 1979). (The court de-clined to overturn a non-jury award of $900,000 to an 11 year old boy who, due to negligence in a U.S. Army Hospital at his birth, suffered total loss of sight in one eye

and impairment in the other, with resulting specific physical and psychological handi-caps. There was testimony from a neurolo-gist and a clinical psychologist concerning those resultant impairments).

As in *Allen,* supra, the verdict form sub-mitted to the jury in this case did not break down the damages question into discrete categories, making the review for uncon-scionability more difficult. In addition, courts are especially hesitant to scrutinize the collective judgment of the jury with respect to pain and suffering. *See Tinner-holm v. Parke Davis & Co.,* 411 F.2d 48, 55 (2d Cir. 1969); *Bevevino v. Saydjari,* 76 F.R.D. at 95. Here, there was evidence of the pain and suffering already endured and anticipated, including the understandable fear of injury to the good eye and resultant total blindness. However, no evidence was presented resembling total psychological pa-ralysis or disability. This sets the case well apart from *Bevevino,* in which the Court of Appeals two years ago affirmed an award of which this element likely comprised somewhat less than $200,000. In *Allen, su-pra,* the pain and suffering showing was much like that here shown and a total award of $240,000 was at issue. Counsel here did not give a figure to the jury for pain and suffering. Having emphasized the lost future earnings element he suggested that, overall, the jury should think "in ex-cess of a million dollars." In the consent pre-trial order $250,000 was the figure giv-en by Morgan for pain, suffering, shame and humiliation. While there can be no "arbitrary limit" on an acceptable jury award for pain and suffering, *Bevevino v. Saydjari,* 76 F.R.D. at 95, in the context of the facts of this case and awards approved in closely analogous cases, $250,000 repre-sents a very generous, but conceivable level to which the jury might legally have gone.

Making this assumption, and con-sidering the $25,000–$30,000 attributable to medical expenses and past wages lost, the jury awarded no less than $425,000 for fu-ture loss of earnings—and perhaps more if the jury's estimate of the value of Morgan's pain and suffering was lower than the esti-mate given here.

It is this award that shocks the conscience as excessive. Such an award was not supported by the clear weight of the evidence. There was no evidence of Morgan's total disability, only some speculation on the possibility in the future. Although the need to cope with new seniority ladders presented some uncertainty, there was uncontradicted evidence that work in Conrail passenger service is now available to him. Even if he does not take that work, there is nothing in the evidence to suggest he is not employable elsewhere. In short, while there was clear evidence that his work qualifications and probably his earning capacity have been impaired, the conclusion that he has been reduced to total or near total disability is unsupported in the evidence. Morgan's opthamologist testified that a "sympathetic" reaction resulting in partial or total blindness in the good eye is highly unlikely in this case.

Morgan's most recent salaries were in the $22,000 – $30,000 range; his starting salary as a ticket taker, the post offered to him, would be in the neighborhood of $21,000 – $25,000. Thus $5,000 – $10,000 would be an approximation of his demonstrated loss of annual earning capacity. The higher figure may be taken here—not arbitrarily, but to give the jury and Morgan the benefit of the doubt as to the reasonable extent of his incapacity. To arrive at a sum to compensate Morgan for this incapacity, for .our purposes here the $10,000 ought merely be multiplied by his 25.9 expected years of work, or $260,000.[4]

Indeed, before launching into an account of the dramatic effect of inflation, counsel for Morgan, in closing argument, put before the jury a figure of "$250,000 or $300,000" as reasonable· to compensate Morgan for his lost future earnings given the apparent magnitude of his earning incapacity. This certainly is not dispositive on the matter, but is another indication that this is the justifiable level of damages on this element.

Adding together these rough, generous estimates of what a jury might justifiably have award based on the evidence for loss of income and pain and suffering, together with medical expenses, the total, before figuring in contributory negligence, is $540,-000. This reduction does not represent a mere substitution of the court's view of a reasonable amount to compensate Morgan in place of the verdict of the jury, but rather an effort to reduce the award to something approximating the highest amount which the jury could properly have awarded. See Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033, 1047 (5th Cir. 1970), cert. denied, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972); Schottka v. American Export Isbrandtsen Lines, 311 F.Supp. 77, 80 (S.D.N.Y.1969). "The trial judge decides what verdict is· within the bounds of reasonable inference from the evidence." Miller v. Maryland Casualty Co., 40 F.2d 463, 465 (2d Cir. 1930) (L. Hand, J.).

■ Accordingly, the $710,000 verdict is hereby set aside as to the amount of damages and a new trial granted Conrail on that issue unless, within twenty (20) days from the date of the entry of the order herein, Morgan files with the Clerk of the Court a remittitur of all damages in excess of $540,000, then to be reduced by 25% in

---

4. An inflation factor is not included into this simple calculation since, on the other side, neither is the computation reducing the figure to its present value. Significantly, the jury was not instructed to so discount any award for lost future earnings.

In fact, this direct, simple calculation, again gives leeway to Morgan, as the Court of Appeals very recently suggested a 2% net inflation-adjusted discount rate as normally "fair to both sides." Doca v. Marine Mercante Nicaraguense, S.A., 634 F.2d 30, 39 (2d Cir. October 1,

1980). See also Espana v. United States, 616 F.2d 41, 45–46 (2d Cir. 1980); Dullard v. Berkeley Assoc., Inc., supra, at 896. Similarly, Morgan is, to say the least, not shortchanged by the absence of a tax calculation here. See generally Norfolk & Western R. Co. v. Liepalt, 444 U.S. 689, 100 S.Ct. 755, 62 L.Ed.2d 689 (February 19, 1980); McWeeney v. New York, N. H. & H. R. Co., 282 F.2d 34, 37 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960).

accordance with the jury's finding of contributory negligence.[5]

IT IS SO ORDERED.

**UNITED STATES of America, Plaintiff,**

v.

**Francisco ANAYA et al., Defendants.***

**No. 80–231–CR–EPS.**

United States District Court,
S. D. Florida.

Dec. 19, 1980.

**5.** Morgan's motion for the entry of judgment nunc pro tunc June 17, 1980, for the purpose of computing interest, is denied. Judgment will be entered as of the date of filing of this order. *Murphy v. Lehigh Valley R. Co.*, 158 F.2d 481, 485 (2d Cir. 1946); *accord, Givens v. Missouri-Kansas-Texas R. Co.*, 196 F.2d 905 (5th Cir. 1952). *Cf. Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d at 1047–48.

* Consolidated with: U.S. v. Peter Winston Phillip, 80–232–CR–EPS; U.S. v. Mario Remis, 80–233–CR–EPS; U.S. v. Jorge Conrado-Perera, 80–235–CR–JWK; U.S. v. Elida Acosta-De Gonzalez, 80–236–CR–EBD; U.S. v. Felipe Garcia, 80–237–CR–JE; U.S. v. Ramon Pinero, 80–238–CR–JE; U.S. v. Victor Hernandez, 80–239–CR-EBD; U.S. v. Adolfo Padron, 80–240–CR–JE; U.S. v. Manuel Virella-Zamora, 80–241–CR–EPS; U.S. v. Alton Peacock, 80–253–CR–CA; U.S. v. Oscar Alberto Miranda-Lorea, 80–254–CR–EBD; U.S. v. Leopold Frade, 80–262–CR–JWK; U.S. v. Anival Jose Fernandez, 80–263–CR–EBD; U.S. v. Angel Nicholas Barberis, 80–266–CR–JE; U.S. v. Moses McIntosh, 80–267–CR–SMA; U.S. v. Jorge Diaz-Sanchez, 80–268–CR–CA; U.S. v. Julio Cesar Martinez, 80–269–CR–EPS; U.S. v. Angel Hurtado, 80–270–CR–EPS; U.S. v. Rolando Balance, 80–272–CR--EPS; U.S. v. Carlos Sainz, 80–294–CR–SMA; U.S. v. Gerardo Cabrera-Gonzalez, 80–315-CR–WMH; U.S. v. Cristobal Socorro-Yerena, 80–324–CR–CA; U.S. v. Raul Eugenio Vera-Garcia, 80–325–CR–WHM; U.S. v. Jorge Luis Machado-Abred, 80–326–CR–EBD; U.S. v. Arturo Gilberto Zaldivar, 80–327–CR–EPS; U.S. v. Pedro Alsaya-Lopez, 80–328–CR–JWK; U.S. v. Reglo Abreu, 80–339–CR–NCR; U.S. v. Ramon Cruz, 80–353–CR–ALH; U.S. v. Ignacio Antonio Zayas-Morales, 80–354–CR–NCR; U.S. v. Jose F. Rodriguez-Guerra, 80–355–CR–EBD; U.S. v. Luis Ramos-Bonet, 80–358–CR–SMA; U.S. v. Alberto Leon, 80–365–CR–NCR; U.S. v. Radames Laso-Gonzales, 80–366–CR–CA; U.S. v. Julian Basto-Rodriguez, 80–367–CR–JCP; U.S. v. Juan B. Bordas, 80–368–CR–WMH; U.S. v. Carlos Moreno-Acosta, 80–369–CR-JE; U.S. v. Nelson Martinez, 80–370–CR–EPS; U.S. v. Rafael Gonzalez, 80–371–CR–EBD; U.S. v. Gabriel Mancrif-Corbina, 80–372– CR–JE; U.S. v. Carlos Cruz De La Lopez, 80–376–CR–EPS; U.S. v. Eduardo Romeu-Vellarde, 80–377–CR–JLK; U.S. v. Orlando Broton, 80–378–CR–SMA; U.S. v. Orlando Alvarez, 80–379–CR–WMH; U.S. v. Austin Garcia, 80–380–CR–JE; U.S. v. Victoriano B. Sanchez, 80–381–CR–JWK; U.S. v. Ramon Garcia-Gonzalez, 80–382–CR–EPS; U.S. v. Pablo Milian-Pena, 80–383–CR–JLK; U.S. v. Adalberto Medero-Arabon, 80–384–CR–SMA; U.S. v. Manuel Garcia-Martinez, 80–388–CR–SMA; U.S. v. Heriberto Canela-Martin, 80–389–CR–JE; U.S. v. Alberto Gonzalez-Lopez, 80–390–CR–JLK; U.S. v. Mario Maximo-Figuerendo, 80–391–CR–SMA; U.S. v. Jose David Cueto-Sanchez, 80–392–CR–EBD; U.S. v. Juan Alberto Jimenez-Alonzo, 80–393–CR–CA; U.S. v. Eutimio Falcon Alvarez, 80–394–CR–EPS; U.S. v. Fernando A. Tapia Perez, 80–395–CR–WMH; U.S. v. Orlando Noriega, 80–396–CR–EPS; U.S. v. Jose Meana-Alzola, 80–397–CR–JLK; U.S. v. Almando Martinez-Roque, 80–398–CR–WMH; U.S. v. Jose Gutierrez-Alvarez, 80–399–CR–SMA; U.S. v. Isiquel Sanchez-Hernandez, 80–401–CR–JE; U.S. v. Gloria Trujillo, 80–402–CR–JWK; U.S. v. Antonio Morgado-Perez, 80–403–CR–CA; U.S. v. Augusto Cuello-Carmona, 80–404–CR–JE; U.S. v. Zoila Alvarez-Murga, 80–405–CR–JWK; U.S. v. Joaquin Olivera-Cala, 80–406–CR–JWK; U.S. v. Raul Toledo, 80–409–CR–EBD; U.S. v. Jamie Lee Spencer, 80–410–CR–NCR; U.S. v. Lorenzo Henriquez-Godinez, 80–411–CR–JLK; U.S. v. Jose Cartaya-Gil, 80–412–CR–EPS; U.S. v. Basilio Barroso-Barcelo, 80–416–CR–WMH; U.S. v. Juan Acosta-Acosta, 80–417–CR–JE; U.S. v. Julio Andersio-Ponce, 80–418–CR–EBD; U.S. v. Enriquez Herrera-Jaro, 80–419–CR–SMA; U.S. v. Orlando M. Artiles-Perez, 80–422–CR–EPS; U.S. v. Raul Trujillo Perez, 80–423–CR–JLK; U.S. v. Victor M. Rodruguez-Leal, 80–424–CR–JWK; U.S. v. Ramon G. Marrero Ruz, 80–425–CR–SMA; U.S. v. Antonio Roman-Rivera, 80–426–CR–JE; U.S. v. Victoriano Roque, 80–427–CR–WMH; U.S. v. David Delgado-Barranco, 80-428–CR–CA; U.S. v. Miguel Diaz-Martinez, 80-429–CR–EBD.