**James P. MERCHANT, Plaintiff, Appellee,**

v.

**Philip Henry RUHLE, Defendant, Appellant.**

**No. 83–1908.**

United States Court of Appeals, First Circuit.

Argued June 6, 1984.

Decided Aug. 1, 1984.

Frank H. Handy Jr., Boston, Mass., with whom Kneeland Kydd & Handy, Boston, Mass., was on brief, for defendant, appellant.

Joseph M. Orlando, Gloucester, Mass., with whom Orlando & White, Gloucester, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Circuit Judge, STEWART,* Associate Justice (Retired), and BREYER, Circuit Judge.

* Of the Supreme Court of the United States, sitting by designation.

COFFIN, Circuit Judge.

This case began as a seaman's claim for damages arising from a back injury suffered as the result of the shipowner's alleged negligence under the Jones Act and alleged maintenance of an unseaworthy vessel. What takes it out of the ordinary is that the jury rendered arguably inconsistent verdicts on negligence and seaworthiness. It answered "yes" to the question: "Did the plaintiff's injuries result in whole or in part from the negligence of the defendant?" It answered "no" to the question: "Did the plaintiff's injuries result in whole or in part from an unseaworthy condition of the defendant's vessel?"

The facts, viewed favorably to the plaintiff-appellee, follow. Plaintiff, who was a member of the crew of a fishing vessel, was loading boxes of frozen mackerel to serve as bait for swordfish when he was injured. His job was to stand on a platform composed of "penboards". Penboards are planks designed to be stacked vertically so as to form a fourth side to enclosures, or "pens" in which fish are stored. In this ship, however, the planks were arranged so that they could be placed horizontally at adjustable heights in the center of the hold to form a platform.

On the day the plaintiff was injured, his assignment was to stand on this platform, which was painted with latex paint, and to reach up to the deck to receive a fifty to seventy-five pound box of bait, which had been carried by a chute from a truck to the deck. A deckhand would take the box from the chute and hand it to the plaintiff who then had to swivel, crouch, and hand it to a crewman in the hold for stowage in a pen. For an hour plaintiff performed this work, occasionally kicking away accumulations of ice which had been spewed onto the platform by two ice machines located on the deck. Finally, plaintiff fell, complaining of pain in his back, but he continued to work for another hour. Plaintiff's witnesses testified that other and better loading methods were feasible: use of a chute to avoid the stage of operations per-

formed by plaintiff; covering the penboards with a less slippery surface such as asphalt tile; constructing the platform of grates with raised edges; lowering the boxes of bait into the hold by winch.

At the end of the three day trial the district court gave its instructions. It began by saying that the jury could find that plaintiff's injuries had been caused "by either the negligence or by the unseaworthiness of the vessel, or by both". It concluded with the same thought. In between, it wrestled with the definitions of negligence and unseaworthiness. Addressing negligence, the court urged the jury to consider the "whole picture" and gave the example of the differing requirements of care for one driving through a busy shopping district during the Christmas rush and for one using the same street when the shops are closed. It wound up its discussion by characterizing the alleged negligence as permitting or causing plaintiff to use a platform of penboards made slippery by ice. The court added that the jury had heard the evidence and its recollection was to govern.

In addressing unseaworthiness the court at first adopted a narrow definition, saying "that things about a ship, whether it's the hull, or the decks, the machinery, the equipment, the tools, must be reasonably fit for the purpose." Only later, in the course of a third explanation did the court add that unseaworthiness could also consist of the "manner" in which equipment was used. Its bottom line conclusion, however, was that plaintiff's unseaworthiness claim was that he was required to work on an icy platform of penboards—the same characterization it had given the negligence claim.

After the charge, appellant objected only to the court's refusal to give requested charges on contributory negligence and on prejudgment interest. The jury, after approximately two hours, requested another explanation of unseaworthiness. The court repeated its earlier instruction. Upon ascertaining that the jury was not yet satisfied, the court undertook a third explanation, saying that the question was whether use of the penboard platform onto which

ice had allegedly fallen was a reasonably fit way to take the boxes of bait into the hold. The court added that this was "in addition to negligence. Negligence has nothing to do about this." An hour later the jury reported, finding the defendant negligent but the vessel seaworthy. The court asked if there were any questions. Counsel for defendant said, "No, your Honor."

■ Several days later defendant moved for a new trial, charging that there had been insufficient evidence of both negligence and unseaworthiness and that the verdicts were "irreconcilably inconsistent". We need spend no time on the challenge to the sufficiency of evidence of unseaworthiness; defendant, after all, has a jury verdict in his favor. Little more effort need be spent on the sufficiency of evidence of negligence. The use of the smooth, painted penboards, the spraying of ice on the platform, the failure to employ a longer chute, or grates, or asphalt tiling, or to lower the boxes by winch—any of these factors would have been sufficient to support a finding of unreasonableness in the bait loading operation.

■ Nor need we tarry in dealing with the alleged error of the court in refusing to instruct the jury to determine whether plaintiff was solely or contributorily negligent. There was no testimony that plaintiff acted other than with reasonable care. Counsel's only basis for his requests was that plaintiff had himself to blame for finding himself working where and as defendant had ordered. The district court aptly cited *Ballwanz v. Isthmian Lines, Inc.*, 319 F.2d 457, 462 (4th Cir.1963), for the proposition that a worker is not "obligated to protest against the method of operation which he had been instructed to follow or to devise a safer method, nor was he obligated to call for additional or different equipment."

■ What gives us pause is the charge of alleged irreconcilable inconsistency in the two verdicts. In considering this issue, we first must determine whether we are

dealing with two general verdicts or a general verdict and answers to interrogatories under Fed.R.Civ.P. Rule 49(b).[1] If the latter applies, we must scrutinize the negligence and seaworthiness findings for irreconcilable inconsistency. *Gallick v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). If we are dealing with general verdicts, we do not have the compulsion of a procedural rule to determine such inconsistency.

What the court did was to submit to the jury a "Verdict Sheet" asking the two questions noted at the outset of this opinion, each question embracing both the existence of fault (whether negligence or unseaworthiness) and causality. These were followed by three other questions, asking for a figure for damages, prejudgment interest, and interest rate. The jury said "yes" to the negligence question, "no" to unseaworthiness, "$85,000" for damages, and "no" to prejudgment interest, leaving blank any response on interest rate. The court then issued an order for judgment for the plaintiff "in accordance with the verdict dated July 22, 1983". There was no other verdict document than the "Verdict Sheet" we have described.

■ We would be reluctant to interpret Rule 49(b) as applicable. First, there is no "general verdict" even if the jury's response qualify as answers to "interrogatories upon one or more issues of fact". Second, the first and second questions and answers are in such comprehensive and conclusory terms as to constitute essentially general verdicts on the two counts of the complaint in all respects but damages.[2] Third, and perhaps most conclusively, in this circuit we follow what we perceive to be the majority rule that "[u]nder Rule 49(b), objections to the inconsistency of verdicts must be made before the jury is discharged or by motion to resubmit to the jury." *Fernandez v. Chardon,* 681 F.2d 42, 58 (1st Cir.1982) (footnotes and citations omitted). *See also 5A Moore's Federal Practice* ¶ 49.04, at 49–55 (1983). *But see* 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2513, at 527 (1971).

■ We therefore address the question: absent a rule, do irreconcilably inconsistent jury verdicts in civil cases mandate the granting of a new trial? The law has long been that inconsistency in criminal verdicts on separate charges against one defendant is not a ground for setting them aside. As Justice Holmes wrote, "[c]onsistency in the verdict is not necessary." *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). That *Dunn* is as strong as ever is clear from *Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). Applicability of this principle to civil jury verdicts is perhaps less categorically established. 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2510, at 525 n. 12 (1971). But a

---

1. In pertinent part Rule 49(b) provides:
   "The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.... When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

2. We recognize that although the early cases interpreted the "issues of fact" language of Rule 49(b) literally, *Carpenter v. Baltimore and Ohio Railroad Co.,* 109 F.2d 375 (6th Cir.1940), and *Feldmann v. Connecticut Mut. Life Ins. Co.,* 142 F.2d 628, 634 (8th Cir.1944), more recent authority, including our own, recognizes the propriety of submitting interrogatories asking mixed questions of law and fact, *Kissell v. Westinghouse Electric Corporation, Elevator Div.,* 367 F.2d 375, 376 (1st Cir.1966); *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 715 (6th Cir.1975). But neither view, it seems to us, would go so far as to hold that if two inconsistent jury dispositions of separate counts could stand if cast as verdicts, they cannot if shown as answers, however determinative of the ultimate legal issues they might be.

number of considerations point to the same tolerance for inconsistency.

In *Parker v. Gordon*, 178 F.2d 888 (1st Cir.1949), we dealt with the issue of inconsistent verdicts on two counts in a civil case, so interpreting them that we found no facial inconsistency. In that case Chief Judge Magruder wrote that, "we have no occasion to consider how far the doctrine of *Dunn v. United States* ... as to really inconsistent verdicts, is law today, and how far it applies also to civil cases." *Id.* at 895. It was perhaps this case that led the Chief Judge's law clerk at the time, Alexander M. Bickel, to write an article entitled *Judge and Jury—Inconsistent Verdicts in the Federal Courts*, 63 Harv.L.Rev. 649 (1950).[3] Bickel drew a distinction between a verdict reflecting "confusion and manifest misapprehension by the jury of the issues", *id.* at 654, and inconsistent verdicts.

He reasoned that although a compromise verdict obviously based on confusion does not represent the judgment of a unanimous jury, inconsistent verdicts represent two unanimous determinations: one, for example, that liability existed; the other, that in view of mitigating or other factors, damages should be limited to something less than full consequences. Professor Wright characterizes Bickel's view thusly: "He considers the right to return inconsistent verdicts as an important attribute of the jury system, and would recognize this right in civil as well as in criminal cases." 3 C. Wright, *Federal Practice and Procedure* § 514, at 18 n. 8 (1982).

An example cited by Bickel is *Fairmount Glass Works v. Coal Co.*, 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933), in which a plaintiff, suing for breach of a contract to purchase 17,500 tons of coal, won a verdict of one dollar. The Court, through Justice Brandeis, reasoned that the jury may have found substantively for the defendant but nevertheless wanted the costs to be taxed against it, and stated:

"Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct. *Compare Union Pacific R. Co. v. Hadley*, 246 U.S. 330, 334 [38 S.Ct. 318, 319, 62 L.Ed.2d 751 (1918) ]; *Dunn v. United States*, 284 U.S. 390, 394 [52 S.Ct. 189, 191, 76 L.Ed. 356 (1932) ]." 287 U.S. at 485, 53 S.Ct. 255.

We deem significant the fact that in this civil case, the Court saw fit to refer to *Dunn*.

A line of cases in the Second Circuit follows suit. In *Jayne v. Mason & Dixon Lines*, 124 F.2d 317 (2d Cir.1941), after indicating that a jury's finding of a driver's contributory negligence was consistent with a verdict for the driver's wife, a passenger, the court, through L. Hand, J., added:

"We do not mean to imply, however, that we should have thought it fatal to the wife's recovery if no rational reconciliation of the verdicts was possible. *Dunn v. United States*, 284 U.S. 390 [52 S.Ct. 189] ..." 124 F.2d at 319.

Judge Weinfeld subscribed to this approach in *Malm v. United States Lines Co.*, 269 F.Supp. 731 (S.D.N.Y.), *aff'd*, 378 F.2d 941 (2d Cir.1967), in a case where a jury, as in this case, found the vessel seaworthy but the defendant negligent. He wrote that:

"Inconsistent jury verdicts upon different counts or claims are not an anomaly in the law, which at times recognizes a jury's right to an idiosyncratic position provided the challenged verdict is based on the evidence and the law." 269 F.Supp. at 731–32 (footnotes omitted).

And, in *Henry v. A/S Ocean*, 512 F.2d 401 (2d Cir.1975), the court, after attempting to reconcile jury verdicts of seaworthiness and negligence by referring to the narrowness of the instruction on seaworthiness, said that it would hesitate to set aside the verdict even if there had been a broader definition, adding, "[v]erdicts finding negligence but no unseaworthiness have been

---

**3.** In 3 C. Wright and A. Miller, *Federal Practice and Procedure* § 524, at 18 n. 8, (1982) this article is still referred to as "a very helpful discussion".

accepted despite an apparent conflict in the findings." *Id.* at 405 *See also Siebrand v. Gossnell,* 234 F.2d 81, 89 (9th Cir.1956).

Finally, in *Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981), the Court, in applying the holding in *Dunn,* permitting inconsistency in a jury verdict in a criminal case, to a similar inconsistency in a state bench trial, stressed "the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons." *Id.* at 345, 102 S.Ct. at 464. It suggested no distinction between the powers of juries in civil and criminal cases.

We subscribe, therefore, to a substantial reluctance to consider inconsistency in civil jury verdicts a basis for new trials. Perhaps there are egregious cases, but this is not one of them. We have described the labors of the district court. They wound up with an internal inconsistency: on the one hand the jury was told that it could find unseaworthiness or negligence (or both); on the other hand, its definitions of unseaworthiness and negligence were more often than not identical—the provision of a working platform of penboard platforms covered with ice. The fact that the jury asked for a definition of unseaworthiness for the third time indicates its confusion. Moreover, the court in its two first instructions, as we have noted, confined the issue of seaworthiness to "things about a ship" such as machinery, equipment, and tools. Only in the third attempt did the court include the "manner" of using the equipment as a factor to be considered. This was the situation in *Henry v. A/S Ocean, supra,* where the trial court had limited unseaworthiness to the condition of the equipment. On appeal the court held that the jury could therefore have concluded that the negligence issue could embrace a wider consideration, i.e., how the equipment was used. So, too, here, the jury could have felt that the penboards, not being defective or generally dangerous, did not constitute unseaworthiness, but that to require the crew to use them while they were being sprayed with ice was negli-

gence. In short, the jury's efforts to apply the instructions were understandable and had some basis.

Capping our determination that the verdicts in this case must stand is the fact that defendant actively signified its agreement with the instructions as given—even though on two occasions the court noted that the jury could find *either* unseaworthiness or negligence. In addition it made no effort to obtain clarification or reconsideration when the jury rendered its verdicts. In cases where the instructions do not foreshadow inconsistency, there is no basis for requiring contemporary objection. But this defendant could have sensed trouble ahead. In view of the close similarity, indeed, substantial identity of the court's definitions of unseaworthiness and negligence, defendant should have observed that there could be no "either-or".

As Judge Rifkind observed in *Bernstein v. Olian,* 77 F.Supp. 672, 674–75 (S.D.N.Y. 1948), *rev'd on other grounds,* 174 F.2d 880 (2d Cir.1949),

> "This charge was given without objection on the part of either of the defendants.... To move for a new trial on the basis of inconsistency of the verdict when an unobjected to instruction permitted the alleged inconsistency, falls within the prohibition of Rule 51."

And, as we said in *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 592 (1st Cir. 1979), "plaintiff did not point out the possible ambiguity during its objections to the instructions at the close of the charge. That was the appropriate time ... any ambiguity was discoverable on the face of the charge, and was not created by the verdict."

Pointing out the latent inconsistency in the charge was not the last point at which confusion could have been cured. When the jury returned its verdicts, the problem could have been pointed out and both judge and jury given a chance to correct any misunderstanding.[4]

---

**4.** We do feel that comment on one pertinent    case cited by appellant is called for, *Turner v.*

To countenance a setting aside of the verdicts in this case would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy.

*Affirmed.*

*The Cabins,* 327 F.Supp. 515 (D.C.Del.1971). In that case the district court granted the defendant's motion for a new trial because there seemed to be no possibility of construing the instructions as to negligence and unseaworthiness as other than identical. But wholly apart from any possible factual differences, there was no consideration of whether inconsistent general verdicts in civil cases were permissible, or of whether challenges could be entertained despite failure to object to the charge or failure to call for clarification of the verdicts when rendered. We do not find it persuasive authority for the instant case.